**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

JEFFREY D. COTTRELL,

Plaintiff,

-vs- Case No: 05-990C

THE UNITED STATES, (Chief Judge Damich)

Defendant.

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS AND PLAINTIFF'S MOTION TO ALLOW A SUPPLEMENTAL RESPONSE FOLLOWING DISCOVERY**

Now comes Plaintiff Jeffrey D. Cottrell, by and through counsel, and hereby submits the attached Memorandum in Opposition, Affidavit and three Appendices in response to the Motion to Dismiss filed by Defendant.

Further, Plaintiff hereby moves this Court for an Order allowing a supplemental response to the Motion to Dismiss once depositions of two individuals – Loran F. Stutz and Michael A. Jacob – are completed.

Respectfully submitted,

S/JOHN T. RYERSON
JOHN T. RYERSON
Attorney
P.O. Box 1824
Columbus, Ohio 43216
(614) 202-0998
Fax (740) 427-5618

Attorney for Plaintiff

## MEMORANDUM IN OPPOSITION

In response to the Motion to Dismiss filed by the Defendant, Plaintiff submits that he has submitted, either through the Complaint or from this Memorandum, Affidavit and Appendices, enough to withstand the Motion to Dismiss on both the grounds of subject matter jurisdiction under RCFC 12(b)(1) and Motion to Dismiss for failure to state a claim upon which relief can be granted under RCFC 12(b)(6).

I. Plaintiff 's Complaint Should Not Be Dismissed for Lack of Subject Matter Jurisdiction

Plaintiff's Complaint arises out of his two ultimately futile attempts to enroll two farms in Coshocton County, Ohio in which he held long-term leases in the Conservation Reserve Program (CRP) and the Production Flexibility Contract (PFC) program under the authority of the United States Department of Agriculture (USDA). Plaintiff acknowledges that the authority of the CRP program is contained in 16 U.S.C. Sec. 3830, et seq. , and the authority for the PFC program is contained in 7 U.S.C. Sec. 7211 and 7212, both statutory citations for stating his claim for money damages under a theory of breach of an express or implied contract. Specifically, 16 U.S.C. Sec. 3833 provides that the Secretary, in return for the contract entered into by an owner or operator, shall pay an annual rental payment in an amount necessary to compensate the owner or operator for either permanently retiring cropland or, as in this case, converting highly erodible cropland to a less intensive use. Further, 7 U.S.C. 7212 provides that the Secretary shall make payments to owners or producers on farmland previously covered under a CRP contract based upon the crops grown on such farmland.

Plaintiff submits that the jurisdiction of this Court is proper, as he is claiming damages for breach of express or implied contract created under the above-cited statutory authority. Alternatively, Plaintiff could seek jurisdiction of this Court through stating a claim based upon the above-cited statutory provisions, which clearly creates a right to money and is accompanied by a right, implied from the terms of that statute, to recover that money, when the legislation cited by the claimant can be fairly interpreted as mandating compensation from the Federal Government for the damage sustained. Bowen v. Massachusetts, 484 U.S. 879, 108 S. Ct. 2722, 101 L. Ed. 2d 749, at note 42 (1988).

Plaintiff further acknowledges that although he did not specifically allege that Defendant and Plaintiff had established two separate contracts, he submits that the language contained in the Complaint is sufficient to state the existence of two contracts and the breach of those contracts. Plaintiff further acknowledges that he misstated the 1996 application as a CRP application, when it was in fact a PFC application under the authority of the program which affected farmland previously enrolled in the CRP program. The information contained in Plaintiff's Affidavit and Appendix attached to this Memorandum in Opposition further establish the existence of two contracts between Plaintiff and the USDA. Plaintiff will move this Court for an Order amending his Complaint under RCFC 15(a), which states that with leave of Court he can amend his Complaint, and such leave shall be freely given. Plaintiff reserves the right to so amend his Complaint, as this matter progresses, in order to make the corrections needed, but submits that at this time such a Motion should await the resolution of Defendant's Motion to Dismiss.

A. Plaintiff's 1996 PFC Application

Defendant states that the USDA has no record of Plaintiff's 1996 PFC Application. Although Plaintiff at this time does not possess and has not been furnished with a copy of his application, despite numerous Freedom of Information Act (FOIA) requests (Plaintiff's Affidavit, par. 14), it is clear that an application was made, and is made specific through the Form CCC-478 Production Flexibility Contract attached to his Complaint as Exhibit D. The actions of the Coshocton County Committee on August 7, 1996 plainly acknowledges the existence of this "Production Facility Contract", as the language of the Minutes clearly states that the Committee "approved CCC-478's for enrollment" for farms including the two operated by Plaintiff Jeffrey Cottrell. See Exhibit E to Plaintiff's Complaint.

The entire gravamen of Plaintiff's Complaint pursuant to the 1996 PFC Program is that despite the enrollment of the two farms in the program, payment to him as operator of the farms was never made. (Plaintiff's Affidavit, par. 15.) Documents contained in the attached Appendix detail the tortured history of Plaintiff's attempts to secure payment under the 1996 PFC Program:

- Plaintiff sent letters to County Executive Director Michael A. Jacob on both October 4 and 23, 1997 in response to Mr. Jacob's letter to him stating that although he had assigned one of his two leases, he had not assigned the other, and had an option to purchase all of the property contained in both leases. (Appendix Vol. 3, pp. 3-4.)
- Requests for Farm Reconstitution were made on October 24, 1997 by Nancy K. Cottrell, alleging that the issues relating to the leases had been

settled, which was not true at that time. (Appendix Vol. 3, pp. 6-11.) Subsequent to that date, the Request for Reconstitution was approved. (Plaintiff's Affidavit, par. 16.)

- James Stuller, one of the persons who had disputed the validity of Plaintiff's Leases, visited the office of Michael Jacob on October 27, 1997, and threatened to take action against the USDA if payment was made to Plaintiff on either lease. (See handwritten note of Michael Jacob, Appendix Vol. 3, p. 12.)
- On that same day, Mr. Jacob sent Plaintiff a letter stating that he no longer had any interest in the acreage covered by the 1996 PFC Program. (Appendix Vol. 3, p. 13.)
- On January 9, 2000, Plaintiff sent a letter to the National Appeals Division requesting information on an appeal because the 1996 PFC Program funds had never been paid. (Appendix Vol. 3, p. 5.)
- On May 26, 2000, the Coshocton County Court of Common Pleas issued Findings of Fact and Conclusions of Law relating to the ongoing disputes over the validity of the leases held by Plaintiff, and found that the leases were valid, and further that Plaintiff had exercised his options relating to those leases, and further, was entitled to all outstanding federal crop payments with regard to the land subject to the two leases dating back to the original date of the lease, even though he had previously validly assigned one lease to Nancy Cottrell. (Appendix Vol. 2. pp. 13-34.)

- On January 8, 2001, Plaintiff received a letter from Mr. Jacob stating that the issue of the payments for the two farms operated by Plaintiff was still disputed, and stated that the contract would be approved once the payment dispute issue was settled. (Appendix Vol. 3, p. 14.)
- Plaintiff then filed an appeal with the NAD, and the NAD ruled that the payment dispute had not been settled. (Appendix Vol. 3, pp. 15-18.)
- The County Committee on August then determined that although the payment dispute had been settled, the division of shares proposed by Nancy Cottrell and the Plaintiff would not be approved, and that a revised CCC-478 Production Flexibility Contract would have to be submitted. (Appendix Vol. 3, pp. 19-22.)

Finally, both Plaintiff and Nancy Cottrell were told on or about September 17, 2001 by County Executive Michael Jacob that if they did not immediately agree to a revised CCC-478 stating that Nancy Cottrell would receive all of the funds that no money would be paid under the 1996 CRP program to anyone. Faced with this prospect, Plaintiff signed this agreement on September 17, 2001. (Plaintiff's Affidavit, par. 17; Appendix Vol. 3, p. 24.)

Thus, Plaintiff was wrongfully denied payment for the 1996 PFC Program for which application had been made, enrollment granted by the County Committee, and finally improperly paid. Further acknowledgment of the existence of this Contract is found in the letter of Mr. Jacob to Plaintiff on October 22, 2001, where he states that the original dispute "was carried forward into the 7-year PFC program", the program for which Plaintiff had applied for payment in 1996.

Although Defendant maintains that Plaintiff must first exhaust his remedies by appealing an adverse decision first to the NAD and then to the district courts, this flies in the face of the opinion and ruling of the United States District Court for the Southern District of Ohio in Case No. C-2-99-282, where Judge Graham, in dismissing a Complaint filed by Plaintiff against the USDA relating to the 1989 CRP application, held that a district court does not have jurisdiction where a plaintiff is seeking money damages for alleged breach of contract. Instead, Judge Graham held that the claim was within the exclusive jurisdiction of the Court of Federal Claims. Plaintiff in bringing this lawsuit is attempting to follow that ruling of the Federal District Court. (See Appendix Vol. 2 for Opinion and Order.)

B. Plaintiff's 1989 CRP Application

Plaintiff's 1989 Application for the CRP Program was properly made (attached as Exhibit A to Plaintiff's Complaint), and responded to by then Coshocton County Executive Director Loran F. Stutz on August 8, 1989, attached as Exhibit B, stating clearly that after the Soil Conservation Service (SCS) provided an acceptable conservation plan, that the COC would send a signed copy of the CRP contract. Plaintiff complied with this provision, through the timely submission of a Conservation Plan completed and submitted on August 31, 1989. (See Appendix Vol. 1, p. 2 for a copy of the cover sheet, and Exhibit C to Plaintiff's Complaint for copy of the approved plan.)

Further support for the existence of the contract comes from a handwritten note from Loran Stutz contained in Plaintiff's file, stating that "it is OK for the 10 yr at this time." The note further stated that the then owner of the land, Mrs. Leroy Stuller,

might die and the land be subject to litigation. (Appendix Vol. 1, p. 1.) Both the handwritten note and the letter to Plaintiff made by Mr. Stutz on August 8, 1989 certainly establish the existence of the 10-year CRP contract.

Following the submission of the Conservation Plan, Plaintiff was scheduled to meet with Tim Halt, the conservation officer who had prepared the conservation plan, on September 5, 1989. Plaintiff then rescheduled the meeting until September 8, 1989 due to the death of Mrs. Stuller on September 4, 1989 and her burial. Plaintiff arrived at the Coshocton County Office on September 8, 1989, and was prevented from meeting with Mr. Halt by Mr. Stutz. (Plaintiff's Affidavit, par. 6.) That same day, there was a note in Mr. Stutz's file acknowledging the existence of the 10-year CRP contract by stating that the "contract is withdrawn". (Appendix Vol. 1, p. 3.) The County Committee later voted not to make payment under the contract.

An additional letter in the file indicates that the USDA officials believed that there was a contract, but that payment could not be made without approval of all potential owners of the land. One, from Ohio Acting Executive Director, stated that "this contract will need to be revised" once the issues relating to the estate were settled. (Appendix Vol. 1, p. 4.) Further support for the position that Mr. Stutz believed there was a contract for the 10 year CRP program is contained in his sworn deposition statements made in August, 1993, where he said that the first 30 days after the receipt of the bid letter by a farmer (as contained in Exhibit B to Plaintiff's Complaint) were "binding", and the farmer can accept the contract within the first 30 days. (Appendix Vol. 1, pp. 8-11.) Thus, Plaintiff submits that a contract was established for payment of the 10 year CRP program on the land covered by the two

leases held by Plaintiff, through his acceptance of the contract through the submission of the approved Conservation Plan; the only issue left at that time was the resolution of the payment of the proper shares due to the death of Mrs. Stuller.

Plaintiff submits that the resolution of the issues relating to the validity of the leases and the ownership of the land were resolved in the previously referenced 2000 decision of the Coshocton County Court of Common Pleas, which further established the right of Plaintiff to receive all funds from federal crop programs. However, by that time, Plaintiff had withdrawn his CRP application in order to apply for the 092 program for the 1990 crop year, as he could not apply for both programs at the same time. This is confirmed by the handwritten note of Loran Stutz from March 15, 1990, where he states that the "farmer chooses the program". (Appendix Vol. 1, pp. 6-7.) Plaintiff was told by Loran Stutz that he had to choose one program or the other. He was forced to withdraw his CRP application under financial duress in order to participate in a program where he could receive funds without waiting for the resolution of the estate and lease dispute. (Plaintiff's Affidavit, par. 8,9.) Plaintiff should have been paid for the 10 year CRP program on the land where he held the leases.

Further, Plaintiff submits that he has previously brought his complaint before the federal courts in the previously referenced 1999 lawsuit, in which Judge Graham ruled that he must bring his complaint in the Court of Federal Claims.

<u>C. Plaintiff's Applications Are Not Barred by the Statute of Limitations</u>

Since 1990, Plaintiff has made well over 25 requests for his file relating to his participation in USDA agricultural programs, and has also engaged in extensive

discovery requests in connection with his two previous federal lawsuits. (Plaintiff's Affidavit, par. 9.) The responses to each request continue to add additional documents not previously supplied. (Plaintiff's Affidavit, par. 11.) In fact, several of the documents contained in the appendix to Defendant's Motion to Dismiss have not been previously furnished to Plaintiff in response to his many FOIA requests, including the Conservation Plan Schedule of Operations contained on page 19 of the appendix. Since Plaintiff did not have knowledge of all the operative facts relating to the approval and submission of his conservation plan until recently, he should not be held to an earlier statute of limitations date. Further, the final exhibit contained in Plaintiff's Complaint, Exhibit G, establishes April 22, 2004 as the day in which Plaintiff has exhausted his administrative remedies in relation to the 1989 CRP application, and therefore, should serve as the date in which his claim has accrued.

D. Plaintiff's 1989 Claim Is Not Barred by Res Judicata

Under a similar analysis, Plaintiff's 1989 Claim is not barred by the doctrine of res judicata from the 1991 decision of the federal court. First, much of the information regarding this application and arguably establishing the existence of the contract was not received until many years after 1991. Second, the resolution of the estate and lease disputes did not occur until the year 2000. Third, the exhaustion of administrative remedies did not occur until 2004. For all of these reasons, Plaintiff's 1989 claims are clearly not barred by a 1991 decision of the federal court.

II. Plaintiff Should be Allowed to Supplement His Response Following Depositions of Loran Stutz and Michael Jacob

It is clear that Plaintiff must secure the testimony under oath of the two Coshocton County Executive Directors during the time of his two CRP applications, Loran F.

Stutz and Michael A. Jacob, in order to obtain the evidence he needs to go forward in this case. Both men could testify concerning the documents referred to in this and Defendant's pleading, and also testify concerning the procedures they followed and actions that they took. Therefore, Plaintiff would move this Court for an Order allowing him to supplement his response to Defendant's Motion to Dismiss following his depositions of both men.

III. Conclusion

For the reasons stated above, Plaintiff requests that the Motion to Dismiss be denied, or in the alternative, that he be allowed to supplement his response following the depositions of Loran Stutz and Michael Jacob.

Respectfully submitted,

S/JOHN T. RYERSON
JOHN T. RYERSON
Attorney
P.O. Box 1824
Columbus, Ohio 43216
(614) 202-0998
Fax (740) 427-5618

Attorney for Plaintiff

**CERTIFICATE OF FILING**

I hereby certify that on January 31, 2006 a copy of the foregoing "PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DIMISS AND PLAINTIFF'S MOTION TO ALLOW A SUPPLEMENTAL RESPONSE FOLLOWING DISCOVERY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ JOHN T. RYERSON