Dandilgchio 8-8-89

Call Rd. Jim. Stuller C.R.P.

10 years. It is ok. for the roye at this Time. at Mrs. Stullers death. There may be some litigation. The present Agreement. is between Mrs. Leroy Stuller & Jeff Calwell.

L. S
Phone

3 Sisters & 1 Brother in family.

# CONSERVATION PLAN

FOR THE PROPERTY OF

Name Jeffrey Cottrell

Address 34395 CR 402, Warsaw OH 43844

Cooperator No. 1802 Phone ______ Acres ______

Twp. Perry 1st Sec. ______

Conservation Plan Completed August 31, 1989
month day year

With the assistance of Tim Holt

In the case of change of Owner or Operator, please notify the

Coshocton SOIL AND WATER CONSERVATION DISTRICT

Address 724 S. Seventh St., Coshocton OH 43812

Telephone 622-8088

Assisted by

UNITED STATES DEPARTMENT OF AGRICULTURE

SOIL CONSERVATION SERVICE

AND

OHIO DEPARTMENT OF NATURAL RESOURCES

DIVISION OF SOIL AND WATER CONSERVATION

9-5-88

Mrs. Lucille Stuller. Passed Away.

~~This Contract.~~ Withdrawn.

because it will be estate Property.

Jim Stuller

We will not make Contract. until all 4 parties Agree!

3 daughters
1 son

United States Department of Agriculture

Agricultural Stabilization and Conservation Service

To: Coshocton County ASC Committee

Date: September 28, 1989

From: Acting State Executive Director
Ohio State ASCS Office

In Reply Refer to: CRP

Subject: Jeff Cottrell, Operator - 10 Year CRP

This responds to your memo of September 25, 1989, regarding persons to sign CRP-1 for Lucille Stuller (deceased), owner of ninth period CRP bid farm. It is our understanding that the farm in question is now an estate soon to be probated. Per three-way telephone conversation with our Midwest Area ASCS Office (Mr. Bob Stephenson), Mark Giles OH-CONS, and Loren Stutz CED Coshocton County ASCS, the following decision was rendered.

The Lucille Stuller farm is now or soon will be in an estate. Therefore, the estate will necessarily need to succeed to the CRP contract, with all heirs signing the CPO and CRP-1. Each heir will sign for an equal share of the CRP payment and assume responsibility for the contract.

When the estate is settled and if there is a change in ownership, then the contract will need to be revised, with revised shares and signatures accordingly at that time as successor-in-interest.

cc: Vernon Rapp, DD

John B. Clark Jr.

Letter sent to Attorney David Railsback copy to STO sent 11-30-89

UNITED STATES DEPARTMENT OF AGRICULTURE
AGRICULTURAL STABILIZATION AND CONSERVATION SERVICE
COSHOCTON COUNTY ASC COMMITTEE
724 S SEVENTH STREET
COSHOCTON OH 43812

November 27, 1989

RE: Letter of November 14, 1989

Dear Sir:

Jeffrey Cottrell offered highly erodible cropland to the Department of Agriculture thru Coshocton ASCS Office. Leased land is from the Lucille Stuller estate at $65.00 per acre for a 10 year option. Payment yearly. Immediately after submitting the bid of $65.00 per acre Lucille Stuller passed away. Jeffrey has 2 long term leases on the offered land, one expiring 1996 and the other in 2007 I believe.

Because Jeffrey is an operator and with the passing of Lucille Stuller owner, at the death there were new owners thru an estate.

It is essential on a 10 year land program, owner/operator rights and concurrence be pursued and documented prior to offering a contract. The program requirement with the the new potential owners (all in the estate agree) to sign the current contract. After the execution of the will the then new owners would again accept a revised contract on their land for the remaining years.

The long leases Jeffrey Cottrell hold may or may not be effective. Someone would determine this at a later date.

ASCS interest is protect all parties involved until the estate is sorted and divided and whatever.

The Coshocton ASCS question and statement is the following for the 1990 annual program.

Jeffrey Cottrell can initiate a 1990 annual 0-92 corn contract (sign-up period between January 16-April 13, 1990) and request 100% payment on the estate land. If and when he would execute the contract, advance payment would be written to the estate of Lucille Stuller. Someone at that level would determine payment eligibility. Again protecting both owner and operator rights.

If you detect improper procedure. Please advise.

As you can see there are two complete and separate farm programs involved.

The 10 year program apparently will not be pursued for several reasons.

The 1 year (annual) is a real possibility for the estate.

Sincerely,

Loran F. Stutz

Loran F. Stutz
County Executive Director

EXHIBIT
P78

3-15-90

Jeffrey Called the Lawyer —
He has Written exactly
What the Lawyer Told him
To write —

Not the way he was told at
ASCS. We Accept any & all
Applications -
The Farmer Chooses the
Program - Not ASCS.

Eileen Evans - heard the
Discussion!

JJS.

Eileen Evans

I Am voluntary withdrawing because I cannot sign into the 0/92 program and continue on with my application with the 10CRP according to Mr. Stutz, Due to the time of year and appeal process I am forced into signing into the 0/92 for the 1990 crop year.

Thank you,

[signature]

MAR. 15-90

EXHIBIT

tabbies

P79

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

-----

| | | |
|---|---|---|
| JEFFREY D. COTTRELL, | ) | |
| PLAINTIFF, | ) | |
| -VS- | ) | CASE NO. C-2-90-609 |
| CLAYTON R. YEUTTER, ET AL., | ) | |
| DEFENDANT. | ) | |

-----

DEPOSITION OF LORAN F. STUTZ, a witness herein, called by the Plaintiff for examination under the statute, taken before me, Kathy J. McGlaughlin, Professional Reporter, and Notary Public in and for the State of Ohio, pursuant to the stipulations of counsel hereinafter set forth at the offices of Coshocton County ASCS, 724 Seventh Street, Coshocton, Ohio, on Thursday, August 19, 1993, beginning at 1:00 p.m.

-----

TAHYI VIDEO & COURT REPORTING
334 Main Street
P.O. Box 72
Zanesville, Ohio 43702-0072
(614) 454-7175
1-800-526-6508

Q. And they are constantly rotating?
A. Exactly.
Q. So, tell us what the -- what is the statutory -- I should say -- I want to say the statutory charge of the ASCS. Why were they created and what do they do?
A. Okay. They determine financial matters, all financial matters. They are obligated to run a program that Congress has given us and approved, and then they determine farmer eligibility payments. That way the staff in the office make no determinations as to dollars.
Q. Um-hmm.
A. And the committees make those dollar determinations. That permits us to -- to do the clerical work, make no decisions that are either for the farmer or against the farmer. We can't do that.
Q. All right. Okay.
A. So, we just --
Q. We haven't gotten to that point yet. I am just trying to find out -- the ASCS administers Federal programs?
A. Yes.
Q. And those programs are for soil conservation?
A. Well, they are -- okay, soil conservation, conservation, yes. We have commodity programs, we have

A. Accepted, yes.
Q. -- within the acceptable bid range?
A. Range.
Q. Okay. Towards the bottom of this it says -- the next to the last paragraph, it says, "COC has until September 1st, 1989, as provided by the contract, to accept your request to participate in the CRP." Is that correct? Is that what it says?
A. That's what it says.
Q. I guess I have two questions. One: Does that mean if the COC doesn't accept it by then the bid must be refiled?
A. It reads -- read on.
Q. Okay.
A. If at the end of the -- of the 30 days a contract has not been approved, you have the right -- you have the option of leaving your bid on file, modifying the acreage offered, or withdrawing from the program.
Q. Okay. So, up to that time, he didn't have the option to withdraw?
A. Right.
Q. All right. Now, it says -- so, in other words, prior to September 1st you were under some kind of contract, the farmer was? It says as provided by the contract. What's the contract?

A. The first 30 days, if there is a contract offered, there is no option to -- I guess the farmer accepts it.

Q. What's the point of that letter? I mean, what is the letter for?

A. Notification that the bid, under the 1990 Conservation Reserve Program, is within the maximum acceptable rental rate established by the Secretary of Agriculture. It is a letter of information.

Q. Yeah. How would the -- how would the farmer -- why would this letter make any difference to him?

A. The next --

MR. HOSTERMAN: For the record -- excuse me for interrupting. I'm going to object to this whole line of questioning. It does not pertain --

MR. KAHRL: This is the last question.

MR. HOSTERMAN: It does not pertain to --

MR. KAHRL: To the remaining count?

MR. HOSTERMAN: Thank you, to the remaining count, two, which is the only count available.

You may answer if you know.

THE WITNESS: I am not going to -- the first 30 days are binding. After 30 days, the farmer has those options.

RECEIVED
HILTON OCT 1 8 1993
KNOX COUNTY ASCS OFFICE

Steve -

The Knox Co. Lease reads

If payment is x Word days late the lease is void.

Coshocton leases read a bit differently. I would expect long leases to Vince McClennan - for Knox Co. farm 1st and Coshocton land later. Take Care.

Logan

IN THE COURT OF COMMON PLEAS OF COSHOCTON COUNTY, OHIO

Nancy K. Cottrell, et al., :

Plaintiffs, : **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

vs :

James Stuller, et al., : Case No. 97-CI-386

Defendants. :

FILED
00 MAY 26 AM 10:16
IRENE [illegible] MILLER
CLERK OF COURTS
COSHOCTON CO, OHIO

AND

James Stuller, :

Plaintiff, :

vs : Case No. 98-CI-184

Tanya Levering, et al., :

Defendants. :

* * * * * * * * * * * * * * * * * * * * * *

In connection with the judgments entered in these two cases this date, the court, as requested, herein separately states its findings of fact and conclusions of law.

**FINDINGS OF FACT**

(1) Lucille Stuller died testate on September 4, 1989.

(2) At the time of her death, Lucille Stuller was 81 years old and in the late stages of ovarian cancer.

(3) At the time of her death, Lucille Stuller owned approximately 1,100 acres of farm land in Coshocton County and 654 acres in Knox County, Ohio.

(4) Lucille Stuller was survived by four children: Nancy

Cottrell, James Stuller, Tanya Levering, and Mary Haldeman and fifteen (15) grandchildren, including Jeffrey Cottrell, the son of Nancy Cottrell. Duane Cottrell is the husband of Nancy Cottrell, Martha Stuller is the wife of James Stuller. Thomas Levering is the husband of Tanya Levering. Carrie Cottrell is the wife of Jeffrey Cottrell.

(5) Jeffrey Cottrell was born September 3, 1967. He started farming when he was 16, leasing ground from Lucille Stuller. The earliest lease was dated June 17, 1983. He farmed ground, borrowed money, bought equipment and subcontracted. Jeffrey Cottrell helped his grandmother by obtaining another sub-lessee when her lessee filed bankruptcy. He had the land in a government program before his grandmother died pursuant to this lease. No other grand-children were interested in farming.

(6) Sometime prior to Lucille Stuller's death, Nancy Cottrell and her husband had operated a sludge business. In connection with that business, they had obtained a loan from Peoples Bank.

(7) Lucille Stuller had cosigned on the loan that Nancy Cottrell and her husband had obtained from Peoples Bank and pledged the Knox county property as collateral.

(8) Nancy Cottrell and her husband defaulted on the loan and filed bankruptcy. Nancy Cottrell filed a petition for

bankruptcy in 1987 and was adjudicated bankrupt in 1988. Lucille Stuller's last will was executed May 5, 1989.

(9) At the time of her death, Lucille Stuller, on behalf of Nancy and Duane Cottrell, had cosigned and pledged her farm land for loans totalling in excess of $200,000.

(10) Lucille Stuller had entered into a series of leases with her grandson, Jeffrey Cottrell. These are set forth in exhibits C-1, C-3 through C-8 and C-11. On March 28, 1986, Jeffrey Cottrell leased approximately 338 acres in Coshocton County, Perry Township, for $10,000 per year from Lucille Stuller. The approximately 338 acres is tillable crop land and of it approximately 200 acres was pasture and was covered by a later lease. He built high-tensile fence and entered the government crop programs. Lucille Stuller knew the land was placed in the federal crop programs. Jeffrey Cottrell moved cows to the 200 acre tract while his grandmother was alive and after he finished his fence. On December 17, 1986, Jeffrey Cottrell leased a barn from Lucille Stuller and on December 17, 1986, Jeffrey Cottrell leased the 200 acre tract for twenty years. The 338 acre lease and the 200 acre lease contained options for Jeff to purchase the land at the appraised value as determined in Lucille Stuller's estate. On December 17, 1986, Jeffrey Cottrell obtained a lease from Lucille Stuller for 338 acres in Coshocton

County, Perry Township, for ten years.

(11) The leases in Knox County identified as exhibits C-1, extended by C-3 and C-7 covered some 668 acres and included an option to purchase as follows:

> It is further agreed by and between the parties hereto that the Lessee, Jeff Cottrell, shall have the first option to purchase that property which is the subject of the June 17, 1983, Lease Agreement, or any part thereof, at its market value as of the date the option is exercised. Market value shall be determined by an appraiser to be agreed upon by the parties. In the event of the death of the Lessor, market value shall be deemed to be the value of the property as determined for purposes of filing an Ohio Estate Tax Return relative to Lessor's estate.

(12) The Knox county lease identified as exhibit C-7, expired on December 31, 1996. A purported attempt to extend the lease for an additional four years by Nancy Cottrell as Executrix of Lucille Stuller's estate (exhibit C-11) was declared invalid by the Knox County Probate Court on October 7, 1993, in Case No. 27585. (exhibit S-41). These holdings were affirmed in 93-CA-24 on September 28, 1999.

(13) Jeffrey Cottrell and Lucille Stuller entered into two leases in regard to farm land in Coshocton county. The first lease (ex. C-4) covered some 338 acres in Perry Township. The term of lease C-4 was extended through December 31, 1996, by

Lease C-8.

(14) Lease C-8 contained an option to purchase as follows:

> It is further agreed by and between the parties hereto that the Tenant, Jeffrey Cottrell, shall have the first option to purchase that property which is the subject of this Lease Agreement, together with any adjoining land owned by Landlord in Perry Township, Coshocton County, Ohio or any part thereof, at its market value as of the date the option is exercised. Market value shall be determined by an appraiser to be agreed upon by the parties. In the event of the death of the Landlord, market value shall be deemed to be the value of the property as determined for purposes of filing an Ohio Estate Tax Return relative to Landlord's estate.

(15) The lease identified as exhibit C-8 was prepared by Jeffrey Cottrell's attorney, Mr. Bruce Malek. Lucille Stuller was unrepresented.

(16) The second Coshocton County lease (exhibit C-6) covered 200+ acres in Coshocton and terminates on December 31, 2007. This lease also contains an option to purchase as follows:

> It is further agreed by and between the parties hereto that the Tenant, Jeffrey Cottrell, shall have the first option to purchase that property which is the subject of this Lease Agreement, together with any other real estate owned by the Landlord in Coshocton County, Ohio, containing approximately 1100 acres, more or less, or any part thereof, at its market value as of the date the option is exercised. Market value shall be determined by an appraiser to be agreed upon by the parties. In the event

> of the death of the Landlord, market value shall be deemed to be the value of the property as determined for purposes of filing an Ohio Estate Tax Return relative to Landlord's estate.

(17) The 200+ acre lease requires no rent payments. It does require improvements and maintenance by the lessee, which were done by Jeffrey Cottrell and his father, Duane Cottrell. It was assigned by Jeffrey Cottrell to Nancy Cottrell in exchange for, among other things, forgiveness of debt in the amount of roughly $30,700.

(18) In the will executed by Lucille Stuller, Nancy Cottrell was named as Executrix. All debts incurred by Lucille Stuller's children at the time of her death were forgiven by the will.

(19) In Lucille Stuller's final will, Nancy Cottrell, as Executrix, was given broad powers to sell all the real estate, by option or otherwise, at her discretion, and without any court order or proceeding to sell and without regard to the necessity of such sale for the purpose of paying debts, taxes, or legacies.

(20) By the terms of the will, each of the four children inherited one-fourth of Lucille Stuller's estate.

(21) Because of the favorable position achieved by Jeffrey Cottrell with respect to the real property in Lucille Stuller's estate, and because of the authority given to Nancy Cottrell in the will and the minor bequests given to the other grandchildren,

James Stuller, Tanya Levering, and Mary Haldeman, on February 1, 1990, filed a will contest in the Knox County Probate Court.

(22) Because of the loans from Lucille Stuller to Nancy and Duane Cottrell, Lucille's other three children, on February 20, 1990, filed Exceptions to Inventory.

(23) Shortly after Lucille Stuller's death, Peoples Bank filed a foreclosure action against the estate of Lucille Stuller on the loan that it had made to Duane and Nancy Cottrell. The foreclosure proceeded to Sheriff's sale on November 16, 1990.

(24) In an attempt to redeem the Knox County property and to resolve the will contest and the exceptions to the inventory, Nancy Cottrell, individually and as Executrix of the estate of Lucille Stuller, James Stuller, Tanya Levering, and Mary Haldeman (the "Parties"), on December 13, 1990, entered into a written settlement agreement. (Exhibit S-19).

(25) The settlement agreement concerned both the Knox and Coshocton properties but treated them differently. In Knox County, the Parties agreed to redeem the Knox County property that was subject to foreclosure by the Peoples Bank, and if successful, the parties agreed to immediately attempt to sell the Knox County property.

(26) In Coshocton County, the parties agreed to defer the sale of the property for a period of five years. The parties

agreed to manage the Coshocton County property by majority vote. At the end of five years, the Coshocton County property was to be equitably divided among the parties or sold. The three heirs have managed the Coshocton property since 1990. The heirs of Lucille Stuller had meetings after Exhibit C-12 was signed. Nancy Cottrell attended a few meetings, but none of her ideas were accepted and no minutes were mailed to her. She quit going.

(27) With respect to the Coshocton property, the parties agreed to be bound by the terms of the settlement agreement in order to avoid the expense of a partition action or any other lawsuit. No similar provision applied to the Knox County property.

(28) Pursuant to the settlement agreement, and in reliance on the agreement of Nancy Cottrell, the Executrix, to proceed with the disposition of the Knox and Coshocton real estate in accordance with the terms of the settlement agreement. James Stuller, Tanya Levering, and Mary Haldeman dismissed the will contest and withdrew their exceptions to the inventory.

(29) The settlement agreement was entered into in the hope of resolving all matters related to the will contest, the exceptions to the inventory, the foreclosure of the Knox County real estate, and the redemption thereof and the disposition of the Coshocton County real estate.

(30) In order to redeem the Knox County property, the parties obtained a loan from Farm Credit Services, Mid-America ACA ("Farm Credit") in the amount of $355,100 and redeemed the property from Peoples Bank.

(31) The loan closed on July 17, 1991. Most of the money was used to pay Nancy and Duane Cottrell's debt to Peoples Bank in the amount of $207,756 that had been cosigned by Lucille Stuller and to pay expenses of the estate, including one-half of Nancy Cottrell's Executrix fees in the amount of $14,250.

(32) After Lucille Stuller's death the Peoples Bank filed foreclosure. Nancy Cottrell obtained a contract to sell the "race track" property for $350.000. That deal was not consummated but later the same buyer purchased the land for $250,000 at Sheriff's sale. At that time the settlement agreement had not been signed. After the Sheriff's sale about 420 acres remained in Knox County.

(33) Pursuant to their management authority in the settlement agreement, James Stuller, Tanya Levering, and Mary Haldeman, through counsel, on October 11, 1991, and again on October 11, 1993, attempted to terminate all the leases with Jeffrey Cottrell.

(34) Repayment of the Farm Credit loan that was used to redeem the Knox County property was to come from rental payments

due from Jeffrey Cottrell. Farm Credit required the parties to assign to Farm Credit all lease payments due from Jeffrey Cottrell.

(35) Jeffrey Cottrell did not participate in the redemption of the Knox County property, was not a signatory on the Farm Credit loan, and was not a signatory to the settlement agreement entered into by the four heirs on December 13, 1990.

(36) By December, 1991, Jeffrey Cottrell took the position that, because of the terms of Lucille Stuller's will, he was no longer obligated to pay rent. Judge Eyster of the Knox County Common Pleas Court found that, with respect to Knox County, Jeffrey Cottrell had not paid rent for 1992, 1993, and 1994. Judge Eyster found for the Coshocton County land that Jeffrey Cottrell had not paid any rent from 1989 through 1994. (Exhibit S-46). Judge Eyster entered judgment against Jeffrey Cottrell in the amount of $122,914.75. (Exhibit S-46).

(37) Jeffrey Cottrell was not able to obtain any federal conservation reserve money from the ASCS. The ASCS is holding crop payments for 1994, 1995, 1996, 1997, 1998, and 1999.

(38) In 1994, in Case No. 94-PR-040093, Nancy Cottrell corroborated Jeffrey Cottrell's testimony.

(39) In 1991, Jeffrey Cottrell purported to exercise his options to purchase all the real estate but Nancy Cottrell, as

Executrix of the Estate of Lucille Stuller, failed to disclose that to the other heirs.

(40) James Stuller, Tanya Levering, and Mary Haldeman did not know that Jeffrey Cottrell had "exercised his option" in 1991 until the testimony of Jeffrey Cottrell and his mother in 1994, Knox County Case No. 94-PR-040093.

(41) Nancy Cottrell, as Executrix of the Estate of Lucille Stuller, failed to take any action regarding Jeffrey Cottrell's exercise of his options.

(42) Jeffrey Cottrell failed to file any action for specific performance, he failed to demand a closing, and he failed to provide cash or suitable financing.

(43) By letter dated October 7, 1993, Nancy Cottrell's siblings notified Jeffrey Cottrell that all leases in Coshocton County and Knox County were terminated and he owed $140,000 rent.

(44) Because of Nancy Cottrell's failure to take any action as Executrix to deal with Jeffrey Cottrell's leases and his failure to pay rent, James Stuller, Tanya Levering, and Mary Haldeman, on February 14, 1992, filed an application to remove Nancy Cottrell as Executrix.

(45) In lieu of forcing her removal, the heirs entered into an agreement whereby Nancy Cottrell agreed to resign as Executrix. On April 15, 1992, Knox County Probate Judge Ronk

accepted Nancy Cottrell's resignation and appointed James Giles as Executor, WWA.

(46) Upon Nancy Cottrell's resignation, the other heirs and the successor Executor proceeded against Jeffrey Cottrell to resolve the controversy regarding the leases and the rental payments.

(47) On May 15, 1992, in Case No. 27585, James Giles, as Executor of the Estate of Lucille Stuller, and the three heirs, as plaintiffs, filed a will construction case in the Knox County Probate Court naming as defendant, Jeffrey Cottrell, Nancy Cottrell, as former Executrix of the Estate of Lucille Stuller, and Duane Cottrell, Nancy's husband.

(48) The will contest was filed to determine whether, as alleged by Jeffrey Cottrell, Lucille Stuller's will relieved him of any and all past, present, or future rent obligations regarding the various leases he signed with Lucille Stuller; whether the leases had been breached by Jeffrey Cottrell; whether the leases were valid; whether there was a rent arrearage, and, if so, the amount. (Exhibit S-39).

(49) On June 16, 1990, Nancy Cottrell, as Executrix, had entered into a lease extension with her son, extending a lease involving 338 acres in Perry Township for an additional four years through December 31, 2000.

(50) Nancy Cottrell extended this lease, not to benefit the estate or the other heirs, but to ensure that her son retained control of the land for a period long enough to qualify for government subsidies.

(51) The will contest was also filed to determine whether the Coshocton County lease extension that had been signed by Nancy Cottrell, as Executrix, extending lease C-8, was valid.

(52) On October 7, 1993, Judge Ronk held that Lucille Stuller's will did not relieve Jeffrey Cottrell from paying rent, that he owed back rent, and that the lease extension executed by Nancy Cottrell, as Executrix, was null and void. (Exhibit S-41).

(53) The Knox County Probate Court deferred a decision on the continuing validity of the leases and on the counterclaims filed by Jeffrey Cottrell, pending resolution of certain jurisdictional issues. The court did not render a money judgment for past due rent. (Exhibit S-41).

(54) Because the will construction case did not resolve the issue of the validity of the leases or the past due rent, James Stuller, on April 27, 1994, filed a complaint in the Knox County Court of Common Pleas for partition and for foreclosure of leases regarding the Knox County and Coshocton County real estate, Case No. 94-PR-040093. (Exhibit S-44).

(55) On May 26, 1994, Nancy Cottrell answered and asserted,

as a defense, the settlement agreement entered into by the parties on December 13, 1990. (Exhibit S-45).

(56) On May 26, 1994, Jeffrey Cottrell filed an answer in Case No. 94-PR-040093. (Exhibit J-8).

(57) On December 12, 1994, Judge Eyster ruled that Jeffrey Cottrell was in default and rendered judgment against Jeffrey Cottrell in the amount of $122,914.75. Judge Eyster also judicially terminated the leases for non-payment of rent and ruled against Jeffrey Cottrell on his counterclaims. (Exhibit S-46).

(58) On December 12, 1994, Judge Eyster also dismissed James Stuller's partition action as it applied to the Coshocton County property, ruling that the settlement agreement entered into by the parties on December 13, 1990, precluded partition. (Exhibit S-48).

(59) On March 21, 1995, the Knox County Court of Common Pleas entered a judgment of partition regarding the Knox County property. (Exhibit S-49).

(60) Pursuant to the court's order, the Knox County property proceeded to Sheriff's sale on November 16, 1995. The sale was confirmed on April 19, 1996. All the parties in this case had an opportunity to bid on the property. James Stuller was the successful bidder and purchased the property for $942,500. From

this sale, each of the four heirs received a net payment of $115,421.

(61) Shortly before the Knox County Court of Common Pleas rendered its decision on the validity of Jeffrey Cottrell's leases in the Stuller partition action, Jeffrey Cottrell and his wife, Carrie, on December 1, 1994, assigned all of their right, title, and interest in "200+ acres" Coshocton County lease, including the options, identified as Exhibit C-6 to his mother, Nancy Cottrell. (Exhibit S-51). The consideration for this transfer included forgiveness of debt in the amount of approximately $30,700.

(62) The lease was for 200+ acres in Coshocton County and included an option to purchase all the Coshocton real estate.

(63) James Stuller, Tanya Levering, and Mary Haldeman had no knowledge of the assignment until almost three years later when, on April 1, 1997, Nancy Cottrell served notice of her intent to exercise the option.

(64) The only consideration received by Jeffrey Cottrell from his mother for the assignment to her was the forgiveness by his mother of the back rent that he owed on the Knox and Coshocton County leases. Jeffrey Cottrell received no money and Nancy Cottrell paid no money for the assignment.

(65) On May 22, 1996, Mary Haldeman filed a partition action

in this court as Case No. 96-CI-221. (Exhibit S-55). She dismissed that case without prejudice on June 30, 1997.

(66) On July 1, 1996, Nancy Cottrell filed an answer in Case No. 96-CI-221 and, as a defense, asserted the settlement agreement entered into by the heirs on December 13, 1990. (Exhibit S-56).

(67) On August 23, 1996, the Court of Appeals in Case No. 95-CA-26 reversed the Knox County Court of Common Pleas in Case No. 94-PR-040093 and remanded the case back to the Knox County Court of Common Pleas. That action, upon transfer to this court was renumbered as 98-CI-184 (Stuller v. Levering, et al.) and was by consent consolidated for trial in this court with the complaint for declaratory judgment, accounting, and specific performance filed by Nancy and Duane Cottrell on August 22, 1997, which bears Case No. 97-CI-386. The Court of Appeals did not order restitution. (Exhibit S-54). Various counterclaims and cross-claims have been added in 97-CI-386.

(68) The Court of Appeals, Fifth Appellate District held that Jeffrey Cottrell had taken adequate steps to constitute acceptance of the opportunities available to him by way of the options.

(69) The Knox County property belonging to Lucille Stuller was appraised for the inventory in the Probate Court. (Exhibit

C-89). The portion of the Knox County property subject to Jeffrey Cottrell's lease and option was appraised in the estate for $628,812, as follows:

| | | |
|---|---|---|
| (a) | 151.50 acres in Pleasant Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 59-00691........... | $159,800. |
| (b) | 23.30 acres in Pleasant Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 59-00692........... | 18,640. |
| (c) | 5.00 acres in Pleasant Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 59-000690.......... | 4,000. |
| (d) | 17.00 acres in Pleasant Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 59-000689.......... | 11,200. |
| (e) | .80 acres in Clinton Township, Knox County, Ohio. (Corn Bins) Knox County Auditor's Permanent Parcel No. 12-01696. | 21,700. |
| (f) | 84.87 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-02489........... | 104,804. |
| (g) | 62.86 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01701........... | 51,400. |
| (h) | 39.41 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01702........... | 30,000. |
| (i) | 26.20 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01697........... | 28,920. |
| (j) | 62.50 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01705........... | 47,250. |

| | | |
|---|---|---|
| (k) | 2.30 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01703........... | 3,220. |
| (l) | 57.69 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-02186........... | 56,728. |
| (m) | 10.00 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-02186.001........ | 6,000. |
| (n) | 101.91 acres in Clinton Township, Knox County, Ohio. Knox County Auditor's Permanent Parcel No. 12-01700........... | 85,150. |

(70) The sale price at the Sheriff's sale was: $942,500. The amount was confirmed on April 19, 1996. (Exhibits J-11, J-12). The difference is $313,688.

(71) Rent from Charity Parkinson was paid to the court and then paid to the heirs after Jeffrey Cottrell was removed from possession. After the Sheriff's sale in 1996, the rent paid by Charity Parkinson was paid to the heirs as follows:

| | | |
|---|---|---|
| 1994 | $ 22,500 | (per court order) |
| 1995 | 32,500 | |
| 1996 | 9,705 | (pro rated) |
| Total | $ 64,705 | |

The Common Pleas Court of Knox County ruled that Jeff Cottrell owed $122,914.75 through 1994, as adjusted for the rent deposited by Charity Parkinson. The Court of Appeals, however, ruled that Jeffrey Cottrell's options merged with the fee upon

his election to exercise his options in 1992 and that no additional rent was due from this point on. Thus, rent from 1992, 1993, and 1994 ($35,000 per year) must be excluded from the $122,914.75 owed. Jeffrey Cottrell owes $17,914.75 in back rent.

(72) The Court of Appeals appeared to rely on the testimony of Jeffrey Cottrell who had testified in the Knox County proceedings that in 1991 he told his mother, who was still Executrix of the estate, that he wanted to exercise his options to purchase all the real estate. (Exhibit S-54).

(73) Nancy Cottrell intends to exercise her option at approximately $335 per acre.

(74) On June 19, 1997, Nancy Cottrell amended her notice rescheduling the closing for a date subsequent to the conclusion of this case and all appeal periods.

## CONCLUSIONS OF LAW

(1) The greater weight of the evidence in these combined cases favors plaintiff, Nancy E. Cottrell and defendant, Jeffrey Cottrell.

(2) The 200+ acre lease in Coshocton County, identified as Exhibit C-6, expires on December 31, 2007. This lease was not terminated as a result of the Knox County proceedings in Case No. 94-PR-040093. This lease is a valid and existing lease between

Jeffrey Cottrell and the heirs of Lucille Stuller.

(3) This lease also contains a valid option to purchase all acreage in Coshocton County, owned by Lucille Stuller at the time of her death.

(4) Jeffrey Cottrell and his wife, Carrie Cottrell, have validly assigned all of their right, title, and interest in the above referenced lease to Nancy Cottrell. The assignment is proper in form and was supported by consideration.

(5) As a result of the assignment of this lease, any other options held by Jeffrey Cottrell to purchase any of the Coshocton County real estate owned by Lucille Stuller at the time of her death are of no effect.

(6) Because the Knox County land was sold during an earlier appeal, the sole remedy is that provided by R.C. 2329.45. Under this provision, Jeffrey Cottrell is entitled to the difference between his option price and the sale price of the land at the Sheriff's sale, plus interest accrued on the sale price thereafter at the rate of 10% per annum.

(7) Jeffrey Cottrell's options merged with fee title upon his election to exercise the options in 1992. Therefore, rent from 1992, 1993, and 1994 should be excluded from any calculation of rent owed by Jeffrey Cottrell.

(8) In Coshocton County, Jeffrey Cottrell was entitled to

exercise his option at the option price.

(9) Because Jeffrey Cottrell's options merged with fee in 1992, he is entitled to all outstanding rents or federal crop payments dating back to the original date of the lease with regard to the land subject to the 330 acre lease and the 200+ acre lease as if he had been in possession.

(10) All amounts owed to Jeffrey Cottrell under this judgment are owed jointly and severally by the four heirs of Lucille Stuller.

(11) The "Settlement Agreement" entered by the parties on December 13, 1990, (Exhibit S-45) was breached because the Knox County land was not sold immediately.

(12) With regard to the claims for set-offs of amounts paid by the estate toward the Peoples Bank mortgage, there are no grounds, equitable or otherwise, for such set-off.

(13) The evidence does not support an award of damages to Mary Haldeman, James Stuller, or Tanya Levering.

(14) The evidence does support the judgments granted herein in favor of Jeffrey Cottrell.

(15) Following the execution of the "Settlement Agreement" the controlling heirs generally acted in disregard of the rights of Nancy Cottrell and any claim that she breached a fiduciary duty to them is not made with clean hands.

INSTRUCTIONS TO THE CLERK

The Clerk of Courts is directed to comply with the rules imposed by *Atkinson v. Grumman Ohio Corp.* (1988), 37 Ohio St. 3d 80 and Civil Rule 58.

Date: 5/26/00

RICHARD I. EVANS, JUDGE

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Judgment Entry was served upon William M. Owens, Attorney for Nancy and Duane Cottrell, 413 Main Street, Coshocton, Ohio 43812; upon William J. Kepko, Attorney for James Stuller and Tanya Levering, 23388 Coshocton Road, Box 28, Howard, Ohio 43028; upon W. Duncan Whitney, Attorney for Mary Lou Haldeman, 15 West Winter Street, Delaware, Ohio 43015; and upon Clyde C. Kahrl, Attorney for Jeffrey Cottrell and Carrie Cottrell, by regular U.S. Mail, postage prepaid, this 26th day of May, 2000.

Deputy Clerk