FILED
JUL 18 2000
Kenneth J. Murphy, Clerk
Columbus, Ohio

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Jeffrey D. Cottrell

Plaintiff

v.

Dan Glickman, Secretary,
USDA

Defendant

**JUDGMENT IN A CIVIL CASE**
Case Number C-2-99-282
Judge James L. Graham

[] **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

[] **Decision by Court.** This action came to trial before the Court. The issues have been tried or heard and a decision has been rendered.

[X] **Decision by Court without trial or hearing.**

**IT IS ORDERED AND ADJUDGED that defendant's motion to dismiss is GRANTED. The claim in count I is dismissed without prejudice for lack of subject matter jurisdiction and counts II and III are dismissed for failure to state a claim and for failure to exhaust administrative remedies.**

July 18, 2000
Date

KENNETH J. MURPHY
Clerk

Deputy Clerk

17

6 A 20 B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
JUL 18 2000
Kenneth J. Murphy, Clerk
Columbus, Ohio

Jeffrey D. Cottrell,

Plaintiff,

v.

Case No. C-2-99-282

Dan Glickman, Secretary,
USDA,

Defendant.

OPINION AND ORDER

This is an action filed by the plaintiff, Jeffrey D. Cottrell, against defendant Dan Glickman in his official capacity as Secretary of the United States Department of Agriculture ("USDA"). The complaint invokes this court's jurisdiction under the federal question provisions of 28 U.S.C. §1331, the tort claim provisions of 28 U.S.C. §1346(b)(1), the Privacy Act, 5 U.S.C. §552a(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§702 and 704.

I. History of the Case

This action stems from the plaintiff's efforts to enroll certain farm acreage which he leased from his grandmother, Lucille Stuller, in the Conservation Reserve Program ("CRP"). See 16 U.S.C. §3830, et seq. In implementing the CRP, the Secretary of the USDA is authorized to enter into rental contracts of ten to fifteen years duration with the owners or operators of eligible farmland. 16 U.S.C. §3831(e). Under this program, the owner or operator of the farmland must agree to refrain from planting crops on the land in question and must establish appropriate vegetative cover to conserve and improve soil and water resources. 16 U.S.C.

16

§§3831(a), 3832. The Secretary is responsible under the contract for sharing in the cost of conservation measures and for paying an annual rental payment to compensate the owner or operator for the conversion of the highly erodible cropland normally devoted to the production of an agricultural commodity on a farm to a less intensive use. 16 U.S.C. §§3833, 3834.

Under the applicable regulations, a long-term agreement must be based on a conservation plan of operations for the farm which has been approved by the Soil Conservation Service ("SCS")[1]. 7 C.F.R. §701.16(b). Any signatory of a long-term agreement who is not an owner of the farm must provide assurance of control of the land for the duration of the period of the agreement. 7 C.F.R. §701.16(e). See also former 7 C.F.R. §704.6(a).

The record reveals that on December 17, 1986, the plaintiff entered into a lease agreement with Mrs. Stuller to lease 338 acres of cropland in Coshocton County, Ohio from January 1, 1987 to December 31, 1996. On that same date, the plaintiff and Mrs. Stuller agreed to the lease of 200+ acres of cropland in Coshocton County from January 1, 1987 to December 31, 2007.

On July 17, 1989, the plaintiff and Mrs. Stuller signed an application to enroll the leased acreage in the CRP program for a ten-year period from January 1, 1990 to December 31, 1999. By letter dated August 8, 1989, Loran F. Stutz, Executive Director of the Coshocton County Agricultural Stabilization and Conservation

[1] The SCS is now known as the Natural Resource Conservation Service of the USDA. See 7 C.F.R. §780.1.

Service Committee ("the Committee"), notified the plaintiff that his CRP bid was within acceptable rental limits, but "it has not yet been determined whether other CRP eligibility criteria have been met, such as, eligibility of the land itself for enrollment in the program." Complaint, Ex. 1. The plaintiff was further advised in this letter that before the Committee could approve the CRP agreement, the SCS had to develop a conservation plan approved by the conservation district for the land in question. The letter also stated that the Committee had until September 1, 1989 to accept the plaintiff's CRP bid. The plaintiff alleges that on August 31, 1989, the SCS submitted an approved plan to the Committee.

On September 4, 1989, Mrs. Stuller died and her estate was admitted to probate. Under the terms of Mrs. Stuller's will, her four children, James Stuller, Tanya J. Levering, Mary Louise Haldeman and Nancy K. Cottrell, were named as heirs to the leased property. Not all of the heirs were in favor of the leased land being entered in the CRP. Upon being informed of Mrs. Stuller's death, the Committee expressed concern that the plaintiff could not demonstrate that he had control over the leased farmland for the entire ten-year CRP period because of the objections of some of the heirs. The plaintiff was advised by the Committee that his application for the CRP was in question because the lease of the 338 acres would expire on December 31, 1996, four years short of the ten-year period for the CRP agreement, and that he would have to obtain an extension of the lease from the four heirs in order to

participate in the program. On June 12, 1990, the plaintiff's mother, Nancy Cottrell, as executor of Mrs. Stuller's estate, signed a document purporting to extend the lease. However, the other three heirs did not sign this document. The plaintiff's CRP application was denied by the Committee due to his failure to obtain the signatures of the remaining three heirs.

On August 15, 1990, the plaintiff filed an action in this court under case number C2-90-609, which was assigned to the Honorable Joseph P. Kinneary. See Defendant's Motion to Dismiss, Ex. A. As in this case, the plaintiff alleged jurisdiction under 28 U.S.C. §§1331 and 1346(b) and 5 U.S.C. §§552a, 702 and 704. The defendants were then Secretary of USDA Clayton K. Yeutter[2] and James Stuller, Tanya Levering and Mary Haldeman. Count I of the complaint in that case alleged that the agency denial of the plaintiff's CRP application was arbitrary and capricious and requested equitable relief directing the Secretary of the USDA to enroll the parcels of land in the CRP. Count II asserted a claim under the Privacy Act, 5 U.S.C. §552a(b), against Secretary Yeutter, alleging unauthorized disclosure of confidential information from the plaintiff's CRP file. Counts III and IV asserted claims of invasion of privacy and defamation, respectively, against Secretary Yeutter, and Count V asserted a claim of tortious interference with a business relationship against defendants Stuller, Levering and Haldeman.

---

[2] The court notes that the former secretary's name is spelled both "Yeutter" and "Yuetter" in the case captions bearing his name. However, "Yeutter" is by far the more frequently used version and is presumably the correct spelling.

By order dated March 27, 1991, Judge Kinneary rejected the Secretary's argument that Count I should be dismissed for failure to exhaust administrative remedies, but granted dismissal of Counts III and IV on that basis. Defendant's Motion to Dismiss, Ex. B. However, by order filed on November 15, 1991, the court granted summary judgment to the Secretary on Count I, finding that the agency acted appropriately in denying the plaintiff's CRP application. On September 27, 1993, Count II was dismissed without prejudice by stipulation. See Defendant's Motion to Dismiss, Ex. D.

Judgment was entered in favor of the Secretary on Count I on October 7, 1993. The plaintiff appealed this judgment to the Sixth Circuit Court of Appeals. On October 11, 1994, the court of appeals affirmed the decision of the trial court. See Defendant's Motion to Dismiss, Ex. E, Cottrell v. Yuetter [sic], 38 F.3d 1215 (unreported), 1994 WL 560967 (6th Cir. 1994). The court of appeals concluded that the evidence in the record supported the decision of the Secretary that the plaintiff was not eligible to participate in the CRP because, in light of the possibility of a will contest between the heirs, he did not provide satisfactory evidence that he would be an operator of the land for the entire CRP contract period. The mandate of the court of appeals was filed on November 2, 1994.

II. Plaintiff's Claims

On March 18, 1999, the plaintiff filed the complaint in the instant case against Secretary Glickman. This complaint also

involves the USDA's decision in 1990 to deny the plaintiff's CRP application. However, this complaint relies on a breach of contract theory. The plaintiff alleges that the August 8, 1989 letter which he received from Director Stutz constituted an acceptance of his application, conditioned on the SCS submitting an approved conservation plan. The plaintiff contends that when the SCS submitted such a plan on August 31, 1989, the acceptance of his application became a contract binding upon the United States which was breached when the Committee revoked his participation in the CRP upon the death of Lucille Stuller.

In regard to Count I, the plaintiff seeks equitable relief in the form of an injunction enjoining the defendant from revoking the plaintiff's participation in the CRP, and ordering the plaintiff's placement in the CRP from January 1, 1990 to December 31, 1999. In the alternative, the plaintiff seeks "restitution" of $269,750, the amount allegedly due under the contract. Complaint, p. 7.

The plaintiff asserts a Privacy Act claim against the defendant in Count II, alleging that in 1989, the Committee released information from his confidential CRP file in violation of 5 U.S.C. §552a(b). This claim is essentially the claim which was previously advanced as Count II in case number C-2-90-609, which was voluntarily dismissed without prejudice. The plaintiff also advances a new Privacy Act claim under 5 U.S.C. §552a(c) - (e) in Count III, alleging the Committee failed to properly maintain, update and correct the contents of the plaintiff's CRP file, to keep a record of disclosures, or to reveal the contents of the file

to the plaintiff. The plaintiff seeks damages, attorney's fees and costs on his Privacy Act claims.

III. Standards for Motion to Dismiss and Summary Judgment

The defendant has moved pursuant to Fed. R. Civ. P 12(b)(1) and (6) to dismiss the plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted.

A complaint may be dismissed for failure to state a claim pursuant to Rule 12(b)(6) only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232 (1974). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978). The court is not required to accept as true unwarranted legal conclusions or factual inferences. Morgan v. Church's Fried Chicken, 829 F.2d 10 (6th Cir. 1987).

Where a defendant raises the issue of lack of subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction in order to survive the motion. Moir v. Greater Cleveland Regional

Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990). In determining whether the facts alleged in the complaint are sufficient to establish subject matter jurisdiction, the factual allegations in the complaint are accepted as true. Ohio National Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).

In considering a motion to dismiss under Rule 12(b)(1), the court is empowered to resolve factual disputes, and may consider matters outside the pleadings without converting the motion to dismiss into a summary judgment motion. Rogers v. Stratton Industries, Inc., 798 F.2d 913, 915-16 (6th Cir. 1986). However, in considering a motion under Rule 12(b)(6), where matters outside the pleading are presented to and not excluded by the court, the motion must be treated as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Here, the parties have presented materials outside the complaint. In an order filed on June 16, 2000, the court announced its intent to treat the defendant's motion to dismiss as one for summary judgment, and gave the parties an opportunity to present additional materials. No such materials have been offered, and the motion is now ripe for a ruling.

The procedure for granting summary judgment is found in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986).

IV. Count I - Breach of Contract

A. Lack of Jurisdiction

1. Court of Federal Claims

The defendant first argues that this court does not have jurisdiction over the plaintiff's breach of contract claim asserted in Count I of the complaint because that claim is one falling within the exclusive jurisdiction of the United States Court of Federal Claims. The Court of Federal Claims has jurisdiction to entertain

> any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. §1491(a)(1). The Court of Federal Claims and the district courts share original jurisdiction over nontort monetary claims against the United States not exceeding $10,000, see 28 U.S.C. §1346(a)(2) (sometimes referred to as the "Little Tucker

Act"), while original jurisdiction over such claims seeking more than $10,000 vests exclusively in the Court of Federal Claims under 28 U.S.C. §1491 (the so-called "Big Tucker Act"). Dia Nav. Co., Ltd. v. Pomeroy, 34 F.3d 1255, 1267 (3d Cir. 1994).

Jurisdiction lies exclusively with the Court of Federal Claims if the claim is "founded upon" a contract between the plaintiff and the United States. A.E. Finley & Assoc. Inc. v. United States, 898 F.2d 1165, 1168 (6th Cir. 1990); 28 U.S.C. §1491(a)(1). If an action rests within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, the district court does not have jurisdiction regardless of other possible statutory bases of jurisdiction such as 28 U.S.C. §1331. Id. at 1167.

The defendant argues that since the claim in Count I is based on an alleged contract with the United States for which the plaintiff seeks in excess of $10,000 in money damages, the claim is within the exclusive jurisdiction of the Court of Federal Claims. The plaintiff asserts in response that he seeks injunctive relief, not money damages, and that the "restitution" which he prays for in the alternative is also a type of specific relief which should not be considered the equivalent of money damages for breach of contract.

A party cannot circumvent the Tucker Act's jurisdiction by suing solely for declaratory or injunctive relief in a case where such relief is tantamount to a judgment for money damages. Veda, Inc. v. U.S. Dept. of the Air Force, 111 F.3d 37, 39 (6th Cir. 1997)("Undoubtedly, the conceptual line between damages for loss

sustained and specific relief may be obscured by creative pleading[.]"); A.E. Finley, 898 F.2d at 1167. It is not the nature of the cause of action which determines whether the jurisdiction is vested in the district court or the Court of Federal Claims, but rather the nature of the relief requested. Matthews v. United States, 810 F.2d 109, 111 (6th Cir. 1987).

The Sixth Circuit applies the "primary objective" test adopted in Eagle-Picher Industries, Inc. v. United States, 901 F.2d 1530, 1532 (10th Cir. 1990). Veda, 111 F.3d at 39. Under this test, if the primary objective of the complaining party is simply to obtain money from the federal government, the case belongs in the Court of Federal Claims. Id.

The fact that a plaintiff has requested equitable relief in the form of an injunction would not give the district court jurisdiction where his prime objective is to recover the money allegedly due him under the alleged contract and where "the practical effect of such an injunction would be to force the government to abide by the contract." Eagle-Picher Industries, 901 F.2d at 1533.

If the plaintiff's claim is concerned solely with rights created within a contractual relationship and has nothing to do with duties arising independently of the contract under a statute or the Constitution, then the claim is founded upon a contract with the United States and is a Tucker Act claim. North Star Alaska v. United States, 14 F.3d 36, 37 (9th Cir. 1994)(plaintiff's claim seeking reformation was based solely on contract and district court

did not have jurisdiction); Transohio Savings Bank v. Director, OTS, 967 F.2d 598, 609, 611 (D.C.Cir. 1992)(jurisdiction question depends on whether, despite the presence of a contract, plaintiff's claims are founded only on a contract, or whether they stem from a statute or the Constitution; district court lacked jurisdiction over claim for specific performance of a contract which did not involve statutory or constitutional rights).

District court jurisdiction over a suit for nonmonetary relief is not foreclosed by the fact that it may later be the basis for an award of damages against the United States by its collateral estoppel effect in the Court of Federal Claims. Matthews, 810 F.2d at 111-112. Likewise, the Court of Federal Claims does not have exclusive jurisdiction over a suit merely because it raises contract-related issues. State of Tennessee ex. rel. Leech v. Dole, 749 F.2d 331, 335 (6th Cir. 1984). However, while the district court can take jurisdiction over a claimant's nonmonetary claims if the nonmonetary relief sought is the primary purpose of the suit, "the declaratory or injunctive relief sought must have significant prospective effect or considerable value apart from merely determining [the] monetary liability of the government." Matthews, 810 F.2d at 111.

Applying the "primary objective" test to the record in this case, this court concludes that the primary objective of the claim in Count I is to recover money from the United States. The language of Count I sounds in contract, and the complaint alleges breach of contract as the plaintiff's basis for recovery. The

plaintiff does not allege in his complaint that he is entitled to the relief requested under the provisions of a specific statute or regulation. The complaint does not identify any statutory or regulatory provision which the defendant violated in not honoring the alleged contract. The plaintiff does not seek an injunction ordering the defendant to adhere to the provisions of some statute or regulation. Rather, the complaint alleges that a binding contract was formed when the SCS submitted an approved conservation plan, and that this contract could not be rescinded upon the death of Mrs. Stuller.

The plaintiff cannot be requesting some form of prospective relief concerning his participation in the CRP because the term of the alleged contract, from January 1, 1990 to December 31, 1999, has passed. By the very posture of this case, the relief sought by the plaintiff is in the nature of compensation for previous damage due to the defendant's alleged breach of a CRP agreement, not future payment for services rendered. See Veda, 111 F.3d at 40, n.2. ("The term 'money damages' is normally associated with compensation for previous damage or injury, not future payment for services rendered."). The plaintiff is in effect seeking an award of money as a substitute for what he alleges the defendant should have done, and such an award would constitute money damages. Pomeroy, 34 F.3d at 1267.

This is not a case where the plaintiff has made no request for monetary relief and "is seeking only injunctive relief to enforce statutory rights." See Veda, 111 F.3d at 39. Injunctive relief in

this case would have no significant prospective effect or considerable value apart from merely determining the monetary liability of the government. See Matthews, 810 F.2d at 111.

Another way of construing the plaintiff's prayer for equitable relief is that it amounts to a request for specific performance of the alleged contract of a value over $10,000. This is not a claim which is within the jurisdiction of this court. The federal courts do not have the power to order specific performance by the United States of its alleged contractual obligations. See Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989)(district court lacked jurisdiction over breach of contract claim requesting specific performance).

The plaintiff cannot avoid the jurisdiction of the Court of Federal Claims by describing his request for monetary compensation as one for "restitution." As the court noted in Reich v. Continental Casualty Co., 33 F.3d 754, 756 (7th Cir. 1994), "restitution is a legal remedy when ordered in a case at law and an equitable remedy ... when ordered in an equity case." The court went on to cite 1 Dan R. Dobbs, Law of Remedies §4.1(2), p. 559 (2d ed. 1993) for the proposition that not every suit for the price of a contract may be converted into a suit for restitution. Reich, 33 F.3d at 756.

This court finds that the primary objective of the plaintiff's claim in Count I is the recovery of money based upon an alleged contract with the United States, and that this court does not have subject matter jurisdiction over this claim.

2. Jurisdiction Under the APA

The plaintiff has invoked this court's jurisdiction under the APA. The plaintiff relies on Bowen v. Massachusetts, 487 U.S. 879 (1988), in which the Supreme Court discussed the nature of a district court's jurisdiction under the APA, 5 U.S.C. §702. That section provides for a waiver of sovereign immunity for claims, other than money claims, filed in the district courts against the government for unlawful agency actions, unless "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." See 5 U.S.C. §702.

In Bowen, the Supreme Court held that the district court had jurisdiction to review an order of the Department of Health and Human Services which refused to reimburse a state for expenditures under a Medicaid program. The state in Bowen sought declaratory or injunctive relief under the APA to require the Secretary to modify future Medicaid practices. The state in Bowen was not seeking money in compensation for damages for a loss suffered as a result of the withholding of funds, but rather seeking to enforce a statutory mandate for the payment of money. Id. at 900.

The courts in North Star and Transohio distinguished Bowen on the grounds that no contract was involved in that case and the Supreme Court did not address the "impliedly forbids" limitation on the APA's waiver of sovereign immunity. Those courts held that the APA does not waive sovereign immunity for contract claims seeking specific or equitable relief. See North Star Alaska, 14 F.3d at 38 (APA does not waive sovereign immunity for contract claims

seeking equitable relief); Transohio Savings, 967 F.2d at 609 (Tucker Act impliedly forbids district court awards of money damages or injunctive relief in contract actions against the government; APA waiver of sovereign immunity does not extend to actions seeking specific performance in contract cases).

The jurisdiction of the district court "does not turn solely on the plaintiff's characterization of its claims as being equitable [in] nature, but on whether the actions seeking equitable relief are really contract claims or ... are claims based on the laws or Constitution of the United States creating" duties that arise independently of the contract. Lulac East Park Place Trust v. U.S. Dept. of Housing and Urban Development, 32 F.Supp.2d 418, 423 (W.D.Tex. 1998)(APA does not waive sovereign immunity for contract-based claims seeking injunctive relief; Tucker Act's bar on granting equitable relief precludes all such relief on contract claims against the government, even if asserted under the APA).

Count I in the complaint before this court is phrased solely as a breach of contract claim. The plaintiff has not alleged that the defendant violated any statute or regulation or provision of the Constitution in failing to admit the plaintiff's farmland into the CRP. The alleged rights upon which he relies are contractual in nature, and do not arise out of any statute or constitutional provision. Therefore, the plaintiff's contract-based claims for equitable relief are barred by the Tucker Act and are not within the jurisdiction of this court under the APA.

Under the APA, judicial review is provided for agency action

"for which there is no other adequate remedy in a court[.]" 5 U.S.C. §704. Since the Federal Claims Court cannot entertain claims for injunctive relief, the Tucker Act will not always provide an adequate remedy in a suit against the United States. Kanemoto v. Reno, 41 F.3d 641, 645 (Fed. Cir. 1994). However, where the relief available in the Court of Federal Claims is adequate, the plaintiff cannot escape the jurisdiction of that court by framing an action that appears to seek only equitable relief when the party's real effort is to obtain damages in excess of $10,000. Id. at 646. Here, the plaintiff's claim in Count I is basically one for monetary relief stemming from the alleged breach of contract, and that claim can be adequately addressed in the Court of Federal Claims.

The plaintiff also relies on the decision in Esch v. Yeutter, 876 F.2d 976 (D.C.Cir. 1989), which involved the USDA's suspension of the plaintiffs' participation in two farm subsidy programs, one of which was the CRP. The court found that the district court properly exercised jurisdiction over the case under the APA, and further found that the USDA had "fatally departed from its own regulations in meting out the suspension under attack." Id. at 977. The court concluded that the plaintiffs' claim, which attacked the adequacy of the administrative procedures leading to the decision to revoke payments and requested redress in the form of a fair and impartial hearing, was not a claim for money damages. In contrast, the plaintiff here has not alleged that the defendant failed to follow USDA regulations, nor is he requesting a new

hearing. Rather, he has in essence requested specific performance of the contract and a monetary recovery. Therefore, Esch is distinguishable.[3] The APA does not furnish a basis for district court jurisdiction in this case.

B. Failure to Exhaust Administrative Remedies

The defendant also argues in the alternative that, even assuming that this court has jurisdiction over the claim in Count I, that claim should be dismissed for failure to exhaust administrative remedies.[4] The APA provides for judicial review of agency action only where it is "made reviewable by statute" or is a "final agency action." 5 U.S.C. §704. Here, there is no statute which makes a USDA determination of ineligibility for the CRP reviewable, nor has the plaintiff shown that he has exhausted his

[3] In footnote dicta, the court in Esch also opined that the subsidy programs were not "contracts" within the meaning of the Tucker Act, despite the fact that the statutes establishing the CRP use the term "contract," see 16 U.S.C. §§3832-3835, because the plaintiff's claims arose under a federal grant program and turned on the interpretation of statutes and regulations rather than on the interpretation of an agreement negotiated by the parties. See Esch, 876 F.2d at 978. This court sees no reason why Congress would have used the term "contract" in the statute if it did not mean "contract" in the usual sense of the word. In any event, the test for Tucker Act applicability is the nature of the relief requested. Claims for the recovery of money based on a federal grant or on an entitlement under a federal statute can also fall within the Tucker Act. See, e.g., Kanemoto, 41 F.3d at 646 (finding Tucker Act jurisdiction over money claim brought under statute providing for restitution to Japanese Americans interned during World War II); Eagle-Picher Industries, 901 F.2d at 1532 ("Situations in which the prime objective of the plaintiff was to obtain money from the government include an effort to enjoin the denial of a federal grant[.]", citing United States v. City of Kansas City, Kansas, 761 F.2d 605, 608 (10th Cir. 1988)). Further, unlike the claims in Esch, Count I in this case alleges solely that the plaintiff is entitled to relief based upon the formation of a binding agreement negotiated with the USDA.

[4] The defendant presents this argument under the framework of the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §1346(b). While the plaintiff has referred to this section in his complaint as a basis for jurisdiction, the claim in Count I sounds in contract and cannot reasonably be construed as a tort claim within the scope of the FTCA. This court's jurisdiction over Count I, if any, would be under the APA, and the court will address the defendant's exhaustion arguments under the standards applicable to claims brought under the APA.

administrative remedies leading to a final agency action.

The exhaustion requirement is not absolute. Courts lack discretion to require exhaustion unless it is expressly required by statute or an agency rule requires such an appeal before review. Dixie Fuel Co. v. Commissioner of Social Security, 171 F.3d 1052, 1058-59 (6th Cir. 1999). Here, the USDA rules do provide a procedure for administrative review. See 7 C.F.R. Pt. 780. These rules include the provision that "[a] decision shall become final and non-reviewable unless reconsideration is timely sought or the decision is timely appealed." 7 C.F.R. §780.8. Therefore, the relevant regulations require an administrative appeal prior to judicial review. See Madsen v. Dept. of Agriculture, 866 F.2d 1035, 1037 (8th Cir. 1989)(upholding dismissal for failure to exhaust administrative procedures in 7 C.F.R. Pt. 780).

Exhaustion of administrative remedies may be excused if the plaintiff demonstrates that it would be futile to comply with the administrative procedures because it is clear that the claim will be rejected. DCP Farms v. Yeutter, 957 F.2d 1183, 1189 (5th Cir. 1992). However, this exception to the requirement that administrative remedies be exhausted applies only in extraordinary circumstances. Id. The burden of demonstrating that exhaustion of administrative remedies would be futile falls on the party seeking to avoid them. Crocker v. Tennessee Secondary School Athletic Ass'n, 873 F.2d 933, 937 (6th Cir. 1989).

In the action previously filed by the plaintiff in this court, Judge Kinneary determined that the plaintiff had sufficiently

demonstrated that pursuing his administrative remedies would be futile. Defendant' Motion to Dismiss, Ex. B, pp. 6-8. However, the issue there was whether the USDA had an adequate opportunity to address the plaintiff's complaint that the agency had acted inappropriately in requiring him to obtain the signatures of the Stuller heirs on the CRP application, and the court concluded that it had such an opportunity.

Here, however, the plaintiff's claim is based on the alleged formation of a binding contract upon the submission of an approved conservation plan by the SCS. He does not allege that he ever presented his contractual theory to the agency at any level for review. In fact, he states in his memorandum contra, p. 7, that "it is probable that the record was tainted and that no one--neither the Committee or others, were aware that the SCS had submitted an approved plan because the Plaintiff was unaware of it." While the plaintiff alleges summarily, Id., p. 7, that the prior fraudulent conduct of the Committee would make any administrative proceeding a sham, he also states at p. 10 that Mr. Stutz, the alleged source of his problems with the Committee, has retired and been replaced. It is also apparent that Clayton Yeutter, who was the Secretary of the USDA at the time of the plaintiff's original application, has since been succeeded by defendant Glickman. Therefore, the plaintiff has not demonstrated that he could not receive a fair hearing before the agency as it is presently constituted. The court finds in the alternative that dismissal of Count I is warranted due to the plaintiff's failure to

exhaust his administrative remedies.

C. Res Judicata

The defendant's third argument in support of his request for the dismissal of Count I is that this claim is barred by res judicata. Under the doctrine of res judicata, once a final judgment on the merits is entered by a court of competent jurisdiction, the judgment operates as a bar to further claims by parties or their privies based on the same subject matter. Montana v. United States, 440 U.S. 147, 153 (1979); Anchor Motor Freight, Inc. v. International Brotherhood of Teamsters, 700 F.2d 1067, 1069 (6th Cir. 1983). Res judicata prevents parties or their privies from relitigating claims or issues that were actually litigated in a prior proceeding, and also bars subsequent litigation of claims or issues which might have been presented in the earlier proceeding. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Castorr v. Brundage, 674 F.2d 531, 536 (6th Cir. 1982).[5] When successive suits seek recovery for the same injury, the earlier judgment on the merits precludes later suits even though they raise different legal theories of recovery. Harrington v. Vandalia-Butler Bd. of Education, 649 F.2d 434 (6th Cir. 1981).

Res Judicata is established with four elements: 1) a final decision was rendered on the merits in the first action by a court of competent jurisdiction; 2) the second action involved the same

[5] Since res judicata bars claims which could have been filed in the prior proceeding, it would only be a bar in this case if the court in the prior action would have had jurisdiction to entertain the plaintiff's breach of contract claim. This court has found, supra, that it did not. Nonetheless, in the interests of judicial economy, the court will address this alternative argument.

parties or their privies as the first action; 3) the second action raises issues actually litigated or which should have been litigated in the first action; and 4) there is an identity of the causes of action. Sanders Confectionary Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir. 1993).

In this case, a final judgment on the merits of the plaintiff's challenge to the decision of the USDA to deny him participation in the CRP was entered in case number C2-90-609. That decision, which was affirmed on appeal, held that the Secretary properly denied the plaintiff's CRP application. There is an identity of parties between the first and second actions because the plaintiff here also filed the prior action, and defendant Glickman is in a position of privity with former USDA Secretary Yeutter, who was a defendant in the first case. The subject matter of the two cases is the same, namely, the propriety of the USDA's refusal to allow the plaintiff to participate in the CRP.

The plaintiff argues that he could not have pursued his contract claim in the first action because he did not know about the submission of the approved conservation plan by the SCS, upon which he bases his contract theory, until after the first action was filed. However, according to the plaintiff's affidavit, paragraph 31, plaintiff's counsel received copies of the SCS approval which had been submitted to the Committee on August 31, 1989 in discovery in 1991. An order was entered in the previous case on November 15, 1991 granting summary judgment to the

Secretary on Count I, but final judgment was not entered on that claim until October 7, 1993, almost two years later. There is no evidence that the plaintiff either moved to amend the complaint or requested reconsideration of the interlocutory order granting summary judgment after discovering evidence of the SCS approved plan in 1991, two procedural avenues which would have been available to him. See Fed. R. Civ. P. 15 (amendment of pleadings); Fed. R. Civ. P. 54(b) (revision of interlocutory order before entry of judgment adjudicating all claims). The plaintiff has failed to show that his breach of contract theory could not have been presented in the previous case.

All of the elements of the res judicata bar have been satisfied. Assuming arguendo that this court has jurisdiction over the plaintiff's breach of contract claim, it is then barred by res judicata.

V. Counts II and III - Privacy Act Claims

A. Statute of Limitations

The defendant has also moved to dismiss the Privacy Act claims asserted in Count II on the ground that this claim is barred by the applicable statute of limitations. The statute of limitations for Privacy Act claims is found in 5 U.S.C. §552a(g)(5), which provides that such claims must be filed

> within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the

individual of the misrepresentation.

A cause of action under the Privacy Act does not arise and the statute of limitation does not begin to run until the plaintiff knows or should know of the alleged violation. Tijerina v. Walters, 821 F.2d 789, 798 (D.C.Cir. 1987). See also Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990)(Privacy Act statute of limitations commences when reasonable person knew or should have known or the alleged violation).

The failure to file a Privacy Act claim within the statute of limitations deprives the district court of jurisdiction. Davis v. United States Dept. of Justice, 204 F.3d 723, 726 (7th Cir. 2000)(plaintiff has burden to show compliance with statute of limitations to invoke court's jurisdiction); Griffin v. United States Parole Com'n, 192 F.3d 1081, 1082 (D.C.Cir. 1999); Akutowicz v. United States, 859 F.2d 1122, 1126 (2d Cir. 1988).

The Privacy Act claim in Count II is the same unlawful disclosure claim that was previously filed as Count II in case number C2-90-609 and was voluntarily dismissed without prejudice. The defendant correctly argues that this dismissal without prejudice did not toll the statute of limitations, if indeed the plaintiff's claim had accrued at that time. See Wilson v. Grumman Ohio Corp., 815 F.2d 26, 27 (6th Cir. 1987).

However, the plaintiff contends that he dismissed the previous Count II because he did not have sufficient evidence to support that count. He further alleges that he was not given the evidence upon which he now relies to establish Count II of the present

complaint in discovery in the previous case, and that he was not provided with that evidence until he filed a Freedom of Information Act ("FOIA") request in March of 1998. Plaintiff's Aff., Paras. 36-40. The plaintiff contends that this information was deliberately concealed from him, and thus the cause of action in Count II did not accrue until he learned of the additional evidence through his FOIA request.

The defendant suggests that the scope of discovery in the civil action relative to the Privacy Act claim may not have been as broad as the scope of information available through a FOIA request, because the FOIA request would include information from other agencies, and that this could explain why the plaintiff did not receive this information in discovery. However, there is no evidence as to why Exhibits J through O to the plaintiff's memorandum contra were not produced in discovery in the first action, but were later available through a FOIA request. The present record also does not reveal what the scope of the plaintiff's discovery request was in the previous action, or whether a reasonable person in the plaintiff's position should have filed a FOIA request sooner as opposed to relying exclusively on the discovery provided during the first case. The court concludes that genuine issues of fact exist as to when the plaintiff knew or should have known of the information he now relies upon to support Count II which preclude summary judgment for the defendant on a statute of limitations ground on Count II.

B. Failure to Exhaust Administrative Remedies

The defendant has also moved for the dismissal of Counts II and III for failure to exhaust administrative remedies. The plaintiff has invokeded the FTCA, 28 U.S.C. §1346(b)(1), as a basis for jurisdiction in this case. However, claims filed under the FTCA must first be submitted to the agency for administrative review. 28 U.S.C. §2675(a). This is a jurisdictional prerequisite to filing a civil action under the FTCA. McNeil v. United States, 508 U.S. 106, 113 (1993)(FTCA bars claimants from bringing suit in federal court until after they have exhausted their administrative remedies); Cadwalder v. United States, 45 F.3d 297, 300 (9th Cir. 1995)(administrative requirements of the FTCA are jurisdictional and must be strictly adhered to because the FTCA waives sovereign immunity); Garrett v. United States, 640 F.2d 24, 26 (6th Cir. 1981)(§2675(a) is a jurisdictional requirement, not capable of waiver or subject to estoppel). Therefore, insofar as the plaintiff seeks to pursue his Privacy Act claims under the FTCA, he must first exhaust his administrative remedies.

There is no indication that the plaintiff has exhausted his administrative remedies by presenting his claim to the USDA. He also has offered no good reason as to why such exhaustion would be futile, and, in any event, futility will not excuse the jurisdictional exhaustion requirement in §2675(a). Industrial Constructors Corp. v. U.S. Bureau of Reclamation, 15 F.3d 963, 967 (10th Cir. 1994)(no futility exception to §2675(a)); Manko v. United States, 830 F.2d 831, 840 (8th Cir. 1987)(same). Due to the plaintiff's failure to comply with §2675(a), the FTCA cannot

furnish a basis for jurisdiction in this case.

The court has found no authority for the proposition advanced by the defendant that the plaintiff must pursue his Privacy Act claims under the jurisdictional provisions of the FTCA. Rather, the Privacy Act itself authorizes the bringing of a civil action against the agency in district court. 5 U.S.C. §552a(g)(1).

However, the Privacy Act has its own exhaustion requirements. "The Privacy Act permits a civil action to enforce its provisions only after exhaustion of administrative remedies." Ezenwa v. Gallen, 906 F.Supp. 978, 986 (M.D.Pa. 1995). See also Holbrook v. C & N Coal Co., Inc., 173 F.3d 429 (unreported), 1999 WL 96744 (6th Cir. 1999)(exhaustion of improper disclosure claim required); Trueman v. United States Dept. of Navy, 131 F.3d 144 (unreported), 1997 WL 734154 (8th Cir. 1997)(exhaustion of denial of access claim required); Taylor v. United States Treasury Dept., 127 F.3d 470, 476-78 (5th Cir. 1997)(same); Dickson v. Office of Personnel Management, 828 F.2d 32, 40 (D.C.Cir. 1987)(exhaustion of amendment of records claim required); Diliberti v. United States, 817 F.2d 1259, 1261 (7th Cir. 1987)(same); Germane v. Heckler, 804 F.2d 366 (7th Cir. 1986)(exhaustion required for claim of failure to maintain records).

Here, there is no indication that the plaintiff ever presented his Privacy Act claims to the agency, nor is there any evidence that such an action would be futile. The court concludes that the plaintiff's Privacy Act claims should be dismissed for failure to exhaust administrative remedies.

C. Failure to State a Claim

The defendant also argues that the Privacy Act claims should be dismissed because the plaintiff has not pleaded that he suffered any adverse consequences due to the alleged violations. This argument is well taken in regard to the claim advanced in Count II.

Under the provisions of 5 U.S.C. §552a(b), "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person" without the prior consent of the person to whom the record pertains, unless one of several exceptions applies. A "record" is defined as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph[.]

5 U.S.C. §552a(a)(4). A "system or records" means "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]" 5 U.S.C. §552a(5).

To establish a right to recover based on a violation of the disclosure prohibitions in 5 U.S.C. §552a(b), the plaintiff must plead facts showing that the agency "acted in a manner which was intentional or willful" in improperly disclosing information " in such a way as to have an adverse effect on an individual." 5 U.S.C. §552a(g)(1)(D), (g)(4).

A claim for damages under 5 U.S.C. §552a(g)(1)(D) for a

violation of the Act's prohibition against disclosure entails the following elements:

> (1) the information is covered by the Act as a "record" contained in a "system of records"; (2) the agency "disclose[d]" the information; (3) the disclosure had an "adverse effect" on the plaintiff (an element which separates itself into two components: (a) an adverse effect standing requirement and (b) a causal nexus between the disclosure and the adverse effect); and (4) the disclosure was "willful or intentional."

Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992).

Neither the allegations in the present complaint nor the exhibits submitted by the plaintiff in support of his memorandum contra identify what type of information was disclosed, or whether this information constituted "records" contained in a "system of records" within the meaning of the Act. Paragraph 19 of the complaint simply alleges that the "contents" of the plaintiff's confidential CRP file were disclosed. The complaint also fails to allege that the plaintiff suffered any adverse effect caused by the alleged improper disclosure of information from his file. The complaint includes no facts identifying any adverse effect or showing how an adverse effect was caused by an illegal disclosure of information. The conclusory allegations in Count II do not state a claim under the Privacy Act.

The plaintiff contends in Count III that the USDA failed to properly maintain, update and correct the contents of the plaintiff's CRP file, to keep a record of disclosures, or to reveal the contents of the file to the plaintiff. The defendant argues that Count III fails to state a claim. The defendant contends that the plaintiff cannot establish that these alleged Privacy Act

violations resulted in an adverse impact upon him.

The court agrees that to the extent that the plaintiff complains of the failure to keep a record of disclosures in violation of 5 U.S.C. §552a(c), the complaint does not allege how the USDA's alleged error had an adverse effect on him, as required under §552a(g)(1)(D), and fails to state a claim.

The same is true of the plaintiff's claim that he was denied access to his record, specifically, the SCS approved conservation plan, as mandated under 5 U.S.C. §552a(d)(1). This claim requires a showing that the agency refused to comply with an individual request for inspection of records under §552a(d)(1). 5 U.S.C. §552a(g)(1)(B) and (3). The access provision of §552a(d)(1) is confined to records or information within a system of records. Manuel v. Veterans Administration Hosp., 857 F.2d 1112, 1116 (6th Cir. 1988). The Privacy Act does not apply where the documents at issue are not contained in the agency's "system of records." Id. at 1117.

The complaint here contains insufficient facts to reveal that the SCS plan was contained in the agency's "system of records" as defined in 5 U.S.C. §552a(a)(5). Further, the only remedies available under this section are an order enjoining the agency from withholding the records and directing the production of any records improperly withhold from the plaintiff, and an award of attorney's fees and costs. 5 U.S.C. §552a(g)(3). Since the plaintiff acknowledges in paragraph 31 of his affidavit that he was given a copy of the SCS plan in 1991 during the discovery phase of the

previous lawsuit, the refusal of access branch of Count III was moot years before this complaint was filed, and Count III fails to state a claim.

The plaintiff's claim of failing to properly maintain records under 5 U.S.C. §552a(e) also relates the agency's handling of the SCS plan. A claim under §552a(e) requires a showing: 1) that the government failed to fulfill its record keeping obligation; 2) that as a proximate result of the failure to keep records, a determination was made which was adverse to the plaintiff; 3) that the agency intentionally or willfully failed to maintain the records; and 4) that the plaintiff suffered actual damages. Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990); 5 U.S.C. §552a(g)(1)(C), (g)(4).

As noted previously, it cannot be determined from the complaint or the present record whether the SCS conservation plan constitutes a "record" within the meaning of the Privacy Act. It is also unclear whether the agency had an obligation to include the SCS plan in its "system of records" or whether the failure to do so can form the basis for a Privacy Act claim. See Manuel, 857 F.2d at 1119 (declining to adopt general position that §552a places affirmative duty on agency to place records into "system of records.") Thus, Count III fails to state a claim.

The defendant argues that the plaintiff cannot show that he was prejudiced by any faulty handling of the SCS plan because the court of appeals held in the previous case that the agency properly denied the plaintiff's application. However, this argument

presupposes that the plaintiff's breach of contract claim is without merit. The complaint does not adequately allege that the plaintiff has suffered actual damages because it cannot be determined whether the plaintiff suffered any injury due to the alleged improper handling of the SCS plan until the Court of Federal Claims decides the merits of the contract claim. If that court concludes that no contract exists, or that a contract was formed but that the agency was authorized to rescind the contract, then the plaintiff has suffered no damages due to the alleged failure to keep records which supposedly led to the agency's failure to honor its contractual obligation. If, on the other hand, the plaintiff prevails on his breach of contract claim in the Court of Federal Claims, and if he is able to satisfy all of the other elements of a §552a(e) claim, then he could conceivably prove damages under the theory that the failure to include the SCS plan in his file resulted in the agency's failure to timely recognize the existence of a contract. At this point, however, the plaintiff's §552a(e) claim is not ripe.

VI. Conclusion

In accordance with the foregoing, the defendant's motion to dismiss is granted. The claim in count I is dismissed without prejudice for lack of subject matter jurisdiction. Counts II and III are dismissed for failure to state a claim and for failure to exhaust administrative remedies.

It is so ordered.

James L. Graham
United States District Judge

Date: July 18, 2000