No. 05-990C
(Chief Judge Damich)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

JEFFREY D. COTTRELL,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director

KELLY B. BLANK
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:
STEVEN G. REED
Assistant Regional Attorney
Office of General Counsel
United States Department of Agriculture
Columbus, OH 43215

February 17, 2006

# TABLE OF CONTENTS

PAGE(S)

ARGUMENT ........ 2

I. This Court Lacks Jurisdiction To Entertain Mr. Cottrell's Claim Based Upon Alleged Denial Of Payments Upon His 1996 Production Flexibility Contract Because The NAD And The District Court Possess Exclusive Jurisdiction Over His Claim ........ 2

II. This Court Lacks Jurisdiction To Entertain Mr. Cottrell's Claim Based Upon Denial Of His 1989 CRP Application Because Mr. Cottrell Has Neither Alleged Nor Established The Elements Of An Express Or Implied Contract With The United States ........ 6

III. Mr. Cottrell Fails To Allege The Existence Of A Money-Mandating Statute Upon Which A Claim For Damages Could Be Based ........ 9

IV. Mr. Cottrell's Claim Arising Out Of His 1989 CRP Application Is Barred By The Statute Of Limitations ........ 10

V. Mr. Cottrell's Claim Based Upon His 1989 CRP Application Is Barred By The Doctrine Of Res Judicata ........ 12

CONCLUSION ........ 13

## TABLE OF AUTHORITIES

### CASES

PAGE(S)

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) .................... 10

Cottrell v. Yeutter,
38 F.3d 1215, 1994 WL 560967 (6th Cir. 1994) .................... 12

Eastport S.S. Corp. v. United States,
372 F.2d 1002 (1967) .................... 10

Farmers & Merchants Bank of Eatonton, Georgia v. United States,
43 Fed. Cl. 38 (1999) .................... 5

Harbert/Lummus Agrifuels Projs. v. United States,
142 F.3d 1429 (Fed. Cir. 1998) .................... 7

Heim v. United States,
50 Fed. Cl. 225 (2001) .................... 12

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) .................... 10

John Muir Mem. Hosp., Inc. v. United States,
221 Ct. Cl. 843, 845-46 (1979) .................... 5

Lee v. United States,
33 Fed. Cl. 374 (1995) .................... 5

Martinez v. United States,
48 Fed. Cl. 851 (2001) .................... 10

Matson Navigation Co. v. United States,
284 U.S. 352 (1932) .................... 5

Nat'l Med. Enter., Inc. v. United States,
28 Fed. Cl. 540 (1993) .................... 5

Smith v. United States,
51 Fed. Cl. 36 (2001) .................... 9

United States v. Fausto,
484 U.S. 439 (1988) ........ 5

United States v. Mendoza,
464 U.S. 154 (1984) ........ 12

United States v. Testan,
424 U.S. 392 (1976) ........ 10

## DOCKETED CASES

Southern District of Ohio, No. C-2-99-282 ........ 5

## STATUTES

7 U.S.C. § 6912(e) ........ 3, 4, 5

7 U.S.C. § 6991 ........ 4

7 U.S.C. § 6999 ........ 3, 4, 5

7 U.S.C. §7212 ........ 9

7 U.S.C. §7212(a)(2) and (3)(A) ........ 9

16 U.S.C. § 3833 ........ 9

28 U.S.C. § 1491 ........ 2

28 U.S.C. § 2501 ........ 10

7 C.F.R § 704.3(a) ........ 7

7 C.F.R § 704.11(e) ........ 7

7 C.F.R. § 780.6(a) ........ 4

7 C.F.R. § 780.15(c) ........ 4

7 C.F.R. § 1412.105 ........ 4

7 C.F.R. § 1412.303(c) ........ 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| JEFFREY D. COTTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-990C |
| | ) | (Chief Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S**
**<u>RESPONSE TO DEFENDANT'S MOTION TO DISMISS</u>**

In our December 29, 2005 motion to dismiss, we established that this Court should dismiss plaintiff Jeffrey D. Cottrell's complaint for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted. We demonstrated that this Court lacks jurisdiction to entertain Mr. Cottrell's claim for damages arising out of the denial of an alleged 1996 Conservation Reserve Program ("CRP") application because he was required to raise such a claim before the National Appeals Division ("NAD") of the United States Department of Agriculture ("USDA"), pursuant to the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994. We also demonstrated that the Court lacks jurisdiction to entertain Mr. Cottrell's claim for damages arising out of denial of his 1989 CRP application because he failed to allege or establish the elements of an express or implied-in-fact contract with the Government upon which a claim for damages could be based. Finally, we established that his 1989 CRP claim was barred by the statute of limitations and the doctrine of <u>res judicata</u>.

In response to our motion, Mr. Cottrell argues that his complaint should not be dismissed because: (1) this Court has jurisdiction to entertain a breach of contract claim, regardless of statutory provisions directing certain appeals from USDA programs to the NAD and district

courts, Pl. Br. at 7;[1] (2) the 1989 CRP was binding because USDA officials allegedly appeared to believe that a contract had been formed, Pl. Br. at 7-8; and (3) certain statutory provisions applicable to CRP contracts mandate the payment of damages in this case. Pl. Br. at 2-3.

As set forth below, the Court should reject Mr. Cottrell's arguments and dismiss his complaint because none of Mr. Cottrell's arguments establish this Court's jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491, or state a claim upon which relief can be granted.

## ARGUMENT

### I. This Court Lacks Jurisdiction To Entertain Mr. Cottrell's Claim Based Upon Alleged Denial of Payments Upon His 1996 Production Flexibility Contract Because The NAD And The District Court Possess Exclusive Jurisdiction Over His Claim

Mr. Cottrell concedes that his complaint misstated the facts by alleging that a CRP contract was denied in 1996. Pl. Br. at 3. As we noted in our moving brief, Mr. Cottrell did not file a CRP application in 1996.[2] Rather, Mr. Cottrell submitted, and the Coshocton County

---

[1] "Pl. Br. at __" refers to a specific page in Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss And Plaintiff's Motion To Allow A Supplemental Response Following Discovery, filed in this Court on January 31, 2006. Citations to "Compl. ¶ __" refer to a specific paragraph of plaintiff's complaint. "Def. App. __" refers to citations to the appendix accompanying our moving brief.

To the extent that Mr. Cottrell's brief seeks discovery in the form of depositions to address the jurisdictional issues raised in our moving brief, such discovery is irrelevant and unnecessary because the allegations as stated in the complaint and the documentary evidence provided in our appendix demonstrate that Mr. Cottrell's claims fail to come within the limited jurisdiction of this Court. We will address Mr. Cottrell's request for discovery in greater detail in the event that he properly raises such a request in a motion to this Court stating the reasons supporting his request.

[2] Mr. Cottrell misstates the contents of our moving brief when he asserts that we denied the existence of a 1996 Production Flexibility Contract. Pl. Br. at 4. Manifestly, we asserted the existence of a Production Flexibility Contract, but denied receiving a 1996 CRP application from Mr. Cottrell. Def. Br. at 6-7.

Agricultural Stabilization and Conservation Service Committee ("County Committee") approved, a Production Flexibility Contract ("PFC") in 1996. Def. App. 42-43; Compl. at Exh. D. Thus, Mr. Cottrell's allegation is actually that the USDA improperly denied payment to him upon the 1996 PFC. Pl. Br. at 6.

However, Mr. Cottrell's attempt to establish jurisdiction by reformulating the allegations in his complaint fails. If Mr. Cottrell desired to appeal the payment decision made by the County Committee upon the 1996 PFC, his appeal should have been submitted to the NAD and, subsequently, to district court. See 7 U.S.C. § 6912(e); 7 U.S.C. § 6999. On November 6, 1997, Nancy Cottrell was denied payment upon the 1996 PFC because of an ongoing dispute regarding the ownership of shares in the farmland at issue. Def. App. 42-45. The County Committee's letter explaining its decision plainly states that administrative appeal rights, including appeal to the NAD, could be pursued as a result of its decision. Id. at 44-45. On September 17, 2001, the County Committee approved a revised PFC following the conclusion of legal proceedings involving the Stuller estate. Def. App. 47-52. On January 11, 2002, the Coshocton County Farm Service Agency ("FSA") issued payments according to the share division provided in the revised PFC. See, e.g., Def. App. 53-57; see also 7 C.F.R. § 1412.303(c) (2001) (providing that the County Committee shall approve the division of payment when, among other things, the "landowners, tenants and sharecroppers sign the contract and agree to the payment shares shown on the contract.") Mr. Cottrell concedes in his brief that he signed the revised PFC upon which final payments were made. Pl. Br. at 6; Def. App. 51. However, he does not state whether he pursued an administrative appeal of the FSA's payment decision.

This Court does not possess jurisdiction to entertain a claim arising out of FSA's payment decision upon Mr. Cottrell's 1996 PFC because such a claim must first be submitted to the NAD, and then appealed to the district courts, which possess exclusive jurisdiction to review NAD decisions. 7 U.S.C. §§ 6912(e) and 6999; 7 C.F.R. § 780.6(a) (appeal procedures for covered programs administered by the FSA for the Commodity Credit Corporation ("CCC"), are appealable to the NAD). The regulations applicable to production flexibility contracts provide that a "producer may obtain reconsideration and review of any adverse determination made under this part in accordance with the appeal regulations found at parts 11 and 780 of this title." 7 C.F.R. § 1412.105 (2001).[3] Therefore, this Court does not possess jurisdiction to entertain Mr. Cottrell's claim that payments made upon the 1996 PFC were improper.

As discussed in our moving brief, the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994 (P.L. 103-354) ("1994 Reorganization Act") established the NAD to adjudicate disputes arising from USDA programs, effective October 13, 1994. See 1994 Reorganization Act § 271 et seq.; 7 U.S.C. § 6991 et seq. Pursuant to 7 U.S.C. § 6912(e), Mr. Cottrell was required to exhaust his administrative remedies by filing a claim with the NAD before filing suit in Federal court.[4]

Because the district courts possess exclusive jurisdiction to review NAD decisions, Mr. Cottrell cannot bring a claim in this Court that could have been initially brought before the NAD.

---

[3] Whether Mr. Cottrell satisfies the definition of a "producer" in order to avail himself of the appeals process is not relevant to the jurisdictional argument before the Court and, therefore, is not addressed in this brief.

[4] Pursuant to 7 C.F.R. § 780.15(c), Mr. Cottrell has 30 days from receipt of written notice of the agency's adverse decision to file an appeal of the agency's determination. Thus, it appears that Mr. Cottrell's administrative appeal may be time barred.

Congress expressly provided that appeals of NAD determinations "shall be reviewable and enforceable" only in the district courts. 7 U.S.C. § 6999. If Congress has made available a remedy other than a suit in the Court of Federal Claims and has explicitly or implicitly indicated that this remedy is to be exclusive, suit in the Court of Federal Claims will be precluded. Matson Navigation Co. v. United States, 284 U.S. 352, 359-60 (1932); see also United States v. Fausto, 484 U.S. 439, 452-53 (1988); John Muir Mem. Hosp., Inc. v. United States, 221 Ct. Cl. 843, 845-46 (1979); Nat'l Med. Enter., Inc. v. United States, 28 Fed. Cl. 540, 545 (1993). Because Congress, in granting the district courts exclusive jurisdiction to review and enforce NAD determinations, did not also expressly preserve this Court's jurisdiction to entertain these appeals, this Court may no longer review NAD appeals.

Nevertheless, Mr. Cottrell contends that 7 U.S.C. §§ 6912(e) and 6999 do not apply to his cause of action because, in a prior lawsuit brought in the United States District Court for the Southern District of Ohio, No. C-2-99-282, the court dismissed Mr. Cottrell's breach of contract claim upon the basis that "a district court does not have jurisdiction where a plaintiff is seeking money damages for alleged breach of contract," and, thus, the claim must be brought in this Court. Pl. Br. at 7; See Attachment B at 9-14. Mr. Cottrell's contention is incorrect. First, the district court's decision does not confer jurisdiction upon this Court. Lee v. United States, 33 Fed. Cl. 374, 380 (1995) ("[a]nother court's jurisdictional determination cannot confer jurisdiction on this or any other court."); see also Farmers & Merchants Bank of Eatonton, Georgia v. United States, 43 Fed. Cl. 38, 44 (1999) (the Court lacked jurisdiction to entertain plaintiff's claim for an alleged breach of contract because Congress displaced Tucker Act jurisdiction in favor of "administrative review in the [NAD] and judicial review in a district

court."). Second, the district court's decision did not address Mr. Cottrell's claim for damages arising out of improper payments made upon the 1996 PFC. Rather, the district court dismissed Mr. Cottrell's claim arising out of the denial of his 1989 CRP application.[5] Thus, Mr. Cottrell's contention that the district court opinion has any bearing upon the jurisdiction of this Court to entertain Mr. Cottrell's PFC claim is incorrect.

Because Mr. Cottrell's claim must first be submitted to the NAD, and because the district courts possess exclusive jurisdiction to review NAD decisions, this Court does not possess jurisdiction to entertain Mr. Cottrell's claim arising out of alleged improper payments made upon his 1996 PFC.

II. This Court Lacks Jurisdiction To Entertain Mr. Cottrell's Claim Based Upon Denial Of His 1989 CRP Application Because Mr. Cottrell Has Neither Alleged Nor Established The Elements Of An Express Or Implied Contract With The United States

Mr. Cottrell's complaint alleges that the USDA improperly denied him enrollment in the 1989 CRP after approving his application. Compl. ¶ 8. In his brief, Mr. Cottrell contends that, although his 1989 CRP application was never signed, it became a binding contract because Loran Stutz, Executive Director of the County Committee, placed a handwritten note in Mr. Cottrell's file stating, "it is OK for the 10 yr at this time," and Mr. Cottrell obtained an approved conservation plan in accordance with Mr. Stutz's August 8, 1989 letter. Pl. Br. at 7-8; Def. App. 1, 15. Mr. Cottrell's contention lacks merit because neither of these alleged facts establish an express or implied-in-fact contract with the Government.

The County Committee possessed delegated authority to approve or deny Mr. Cottrell's

[5] Additionally, the district court dismissed Mr. Cottrell's breach of contract claim upon two alternative grounds. The district court found that Mr. Cottrell's breach of contract claim arising out of denial of the 1989 CRP application could also be dismissed for failure to exhaust administrative remedies and upon the basis of res judicata. Attachment B at 18-23.

CRP application. 7 C.F.R §§ 704.3(a) and 704.11(e) (1989). Mr. Cottrell's suggestion that the submission of an approved conservation plan operated to automatically create a binding CRP contract is incorrect. The appendix to the 1989 CRP application signed by Mr. Cottrell plainly states that the contract is not effective unless signed by "an authorized representative of CCC." Def. App. 13-14. The CRP application was never approved and signed by the County Committee. Def. App. 1, 17.

Even assuming that Mr. Stutz included a handwritten note in Mr. Cottrell's file stating that the application is "OK for the 10yr at this time," this note is properly construed as an initial assessment or recommendation, not an authorization of the CRP contract. Moreover, the note is dated August 8, 1989, the same day that Mr. Stutz sent a letter to Mr. Cottrell informing him that he appeared to satisfy some of the eligibility criteria. Def. App. 15. Once Mrs. Stuller was deceased, however, the application ceased to be acceptable and was not authorized by the County Committee. Def. App. 17-21. The lack of a signed CRP contract, or any evidence that the CRP application was accepted by the County Committee, demonstrates that there was no unambiguous offer and acceptance between Mr. Cottrell and an authorized agent of the Government. See Harbert/Lummus Agrifuels Projs. v. United States, 142 F.3d 1429, 1434 (Fed. Cir. 1998).

Mr. Cottrell's reliance upon the August 8, 1989 letter as evidence of a binding contract is also misplaced. The letter plainly informed Mr. Cottrell that the County Committee must consider all of the eligibility criteria before approving and signing the CRP contract, stating that, "it has not yet been determined whether other CRP eligibility criteria have been met." Def. App. 15. Under the terms of the contract, Mr. Cottrell's application constituted an irrevocable offer which the County Committee could accept until 30 days after the end of the applicable signup

period.[6] Def. App. 11. Mr. Stutz informed Mr. Cottrell that, after the Soil Conservation Service "has provided this office with an approved conservation plan . . .[p]ractices to be carried out under CRP may be started at this time . . . with the understanding that" payment will not be made if the "[c]ontract is not approved by" the County Committee. Id. Thus, the letter explained that approval of a conservation plan did not constitute approval of the CRP contract.

Mr. Cottrell alleges that, because "USDA officials believed that there was a contract," a valid contract must have existed. Pl. Br. at 8. Even assuming that any evidence exists to support this allegation, despite the amount of correspondence indicating that the USDA did not, in fact, believe a contract had been formed, it is irrelevant what USDA officials may have believed about the CRP application approval process. Ultimately, the four corners of the CRP application itself, as well as the applicable statutes and regulations, determine whether a binding contract was formed. The only relevant issue is whether the CRP application was approved officially by the County Committee pursuant to its delegated authority to bind the Government to a CRP contract. The evidence demonstrates that the County Committee never approved such a contract. Def. App. 1, 17-21. Although Mr. Cottrell mistakenly alleges that the County Committee "voted not to make payment under the contract," the facts demonstrate that the County Committee, in fact, voted to table Mr. Cottrell's application. Pl. Br. at 8; Def. App. 17. Moreover, Mr. Cottrell concedes that he "with[drew] his CRP application" when he applied to participate in the 1990 Wheat and Feed Grain program, thus suggesting that he formally rescinded his application prior to approval. Pl. Br. at 9; Def. App. 23-24.

---

[6] Mr. Cottrell mischaracterizes this contractual provision in his brief by representing that "the farmer can accept the contract within the first 30 days." Pl. Br. at 8. In fact, the farmer's application is an irrevocable offer, and the County Committee has the right to accept the contract within the first 30 days. Def. App. 11.

Accordingly, Mr. Cottrell has failed to establish the required elements of an express or implied-in-fact contract with the USDA to establish this Court's jurisdiction.

III. Mr. Cottrell Fails To Allege The Existence Of A Money-Mandating Statute Upon Which A Claim For Damages Could Be Based

Mr. Cottrell contends that this Court possesses jurisdiction to entertain his claims because 16 U.S.C. § 3833 and 7 U.S.C. §7212 are money-mandating provisions of law entitling him to payment under the CRP program. Pl. Br. at 2-3; See Smith v. United States, 51 Fed. Cl. 36, 37 (2001). Mr. Cottrell's assertion is unavailing because the statutes he relies upon to create jurisdiction only mandate payment where a CRP contract exists between the claimant and the Government. Because Mr. Cottrell lacks a binding CRP contract with the Government, he may not avail himself of these statutory provisions to establish jurisdiction.

Section 3833 of title 16 provides that "[i]n return for a contract entered into by an owner or operator . . . the Secretary shall . . . share the cost of carrying out the conservation measures . . . [and] pay an annual rental payment . . . ." 16 U.S.C. § 3833 (emphasis added). Thus, the Secretary is only obligated to make payments to an owner or operator upon a valid contract. Section 7212(a) of title 7 provides that, after August 1, 1996, the Secretary shall only allow "an eligible owner or producer on a farm covered by a conservation reserve contract" to enter into a production flexibility contract. 7 U.S.C. § 7212(a)(2) and (3)(A) (emphasis added).[7] Because Mr. Cottrell was not covered by a conservation reserve contract, this provision is not applicable to him. Mr. Cottrell does not point to any statutory provision which mandates that the Government make payment to him upon his 1989 CRP application because he entered into a

[7] Mr. Cottrell entered into his production flexibility contract on July 31, 1996. Compl. at Exhibit D.

production flexibility contract in 1996. In the absence of a contract, neither of these statutes expressly mandate compensation by the Government for the damage allegedly sustained by Mr. Cottrell. See United States v. Testan, 424 U.S. 392, 400 (1976) (quoting Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1009 (1967)).

IV. Mr. Cottrell's Claim Arising Out Of His 1989 CRP Application Is Barred By The Statute Of Limitations

Mr. Cottrell's claim arising from his 1989 CRP applications is barred by the six-year statute of limitations set forth in 28 U.S.C. § 2501. Section 2501 states that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. To prove that his claim is not time barred, Mr. Cottrell must show that his "claim first accrued within six years of the filing of the complaint." Martinez v. United States, 48 Fed. Cl. 851, 857 (2001) (emphasis added). A claim first accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988). In the case of an alleged breach of contract, "a cause of action accrues when the breach occurs." Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (quotation omitted).

Mr. Cottrell's breach of contract claim is founded upon his allegation that the USDA improperly denied him enrollment in the 1989 CRP despite the fact that his CRP application was automatically authorized upon approval of his conservation plan. Compl. ¶¶ 7, 8. Although the County Committee decided in 1989 not to enroll Mr. Cottrell in the CRP, Mr. Cottrell contends

that his claim is not time barred because he "did not have knowledge of all the operative facts relating to the approval and submission of his conservation plan until recently." Pl. Br. at 10. However, Mr. Cottrell stated in a signed affidavit that he learned in 1991 that the conservation plan had been approved. Attachment A ¶ 31 (Cottrell affidavit). To the extent that Mr. Cottrell argues that the statute of limitations accrued when he received information regarding the approved conservation plan, Mr. Cottrell's affidavit states that this occurred in 1991.

Mr. Cottrell further alleges that the statute of limitations did not accrue until his administrative appeals were exhausted on April 22, 2004, citing to Exhibit G of his complaint in which the USDA informed Mr. Cottrell, "[f]rom your messages, it appears that you have exhausted your administrative appeals with [USDA] related to your 1989 CRP contract." Compl. at Exh. G (emphasis added). However, the USDA's letter only states that administrative appeals had been exhausted, not that they were exhausted as of the date of the letter. Indeed, there was no administrative appeals process pending to conclude. The facts demonstrate that Mr. Cottrell's administrative appeals were exhausted on March 3, 1991, when the USDA Deputy Administrator of State and County Operations denied his appeal of the County Committee's decision regarding his 1989 CRP application, stating that "[t]his concludes the administrative appeal rights afforded at 7 CFR Part 780." Def. App. 31. Given the plain evidence that Mr. Cottrell pursued and exhausted his administrative appeals in 1990-1991, Mr. Cottrell's assertion to the contrary mischaracterizes the April 2004 letter by suggesting that Mr. Cottrell exhausted his appeals upon its receipt.

Because Mr. Cottrell does not allege any improper actions by the USDA relevant to the denial of his 1989 claim within the six years prior to filing his complaint in this Court on

September 13, 2005, this action is barred by the statute of limitations. Consequently, this Court is without jurisdiction to entertain Mr. Cottrell's claim for damages in his complaint. RCFC 12(b)(1).

V. Mr. Cottrell's Claim Based Upon His 1989 CRP Application Is Barred By The Doctrine Of Res Judicata

Pursuant to the doctrine of res judicata, once a litigant has had a full and fair opportunity to litigate a claim, a final judgment upon the merits of that action precludes the relitigation of issues that were or could have been raised in that action. United States v. Mendoza, 464 U.S. 154, 171 (1984); Heim v. United States, 50 Fed. Cl. 225, 233 (2001).

As discussed in our moving brief, the elements of res judicata are satisfied in this case. Mr. Cottrell's previous action in the United States District Court for the Southern District of Ohio satisfies the requirement that there must be a prior final judgment upon the merits. In 1990, the district court issued a decision dismissing Mr. Cottrell's claim upon his motion for summary judgment, finding that it "in order to gain enrollment in the program [Mr. Cottrell] must have unfettered control over the property for ten years . . . . Therefore, unless he can demonstrate the validity of the lease, his claim for instatement must fail." Def. App. 40. Mr. Cottrell contends that the facts "establishing the existence" of a CRP contract were not available in 1991. Pl. Br. at 10. However, Mr. Cottrell received copies of the approved conservation plan, upon which he appears to base his claim, during discovery in 1991. Attachment A ¶¶ 31-32 (Cottrell affidavit, dated February 28, 2000). Although the district court dismissed Count I of Mr. Cottrell's complaint on November 15, 1991, it continued to litigate his other claims and did not enter final judgment until October 7, 1993. See Cottrell v. Yeutter, 38 F.3d 1215, 1994 WL 560967 *1 (6th

Cir. 1994). Thus, Mr. Cottrell possessed ample time to submit his breach of contract theory to the district court, but opted not to. To the extent that Mr. Cottrell now alleges a breach of contract, this claim could have been raised before the district court because all of the facts necessary to support Mr. Cottrell's breach of contract theory were made available to him during discovery in that cause of action.

Mr. Cottrell also alleges that res judicata does not apply because resolution of "estate and lease disputes did not occur until the year 2000." Pl. Br. at 10. Mr. Cottrell does not explain how this allegation is any way relevant to his breach of contract claim. Mr. Cottrell's breach theory relies upon the County Committee's denial of payment upon an alleged CRP contract. Accordingly, his claim accrued at the time he was made aware of the County Committee's decision. The disputes regarding the Stuller estate are irrelevant to the issue of whether Mr. Cottrell had an opportunity to litigate his breach of contract claim before the district court. Finally, Mr. Cottrell's assertion that res judicata cannot apply because his administrative appeals were not exhausted until 2004 is factually incorrect. Mr. Cottrell's administrative appeals were exhausted on March 3, 1991. Def. App. 30-31.

Accordingly, Mr. Cottrell's 1989 claim is barred by the doctrine of res judicata and his claim should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in our moving brief, we respectfully request that the Court grant defendant's motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

S/ BRYANT G. SNEE
BRYANT G. SNEE
Assistant Director

S/ KELLY B. BLANK
KELLY B. BLANK
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L St., N.W.
Washington, D.C. 20530
Tele: (202) 353-7961
Fax: (202) 353-7988

Attorneys for Defendant

Of Counsel:
STEVEN G. REED
Assistant Regional Attorney
Office of General Counsel
United States Department of Agriculture
Columbus, OH 43215

February 17, 2006

**ATTACHMENT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION

Jeffrey D. Cottrell,

*Plaintiff,*

Case No. C2-99-282

Judge Graham

Dan Glickman,
Secretary of United States
Department of Agriculture, *et al.*,

Magistrate Judge Abel

*Defendants.*

---

AFFIDAVIT OF JEFFREY COTTRELL

---

STATE OF OHIO
) SS
COUNTY OF KNOX

Now comes Jeffrey D. Cottrell, having been duly cautioned and sworn, and states that the following facts are true based on his personal knowledge.

1) I am a farmer. On December 17, 1986, I entered into a Cash Farm Lease with my grandmother, Lucille Stuller, whereby I leased 338 acres of farmland which she owned in Perry Township, Coshocton County, Ohio for a ten-year period, from January 1, 1987 through December 31, 1996

2) Also on December 17, 1986, I entered into a Farm Lease with Lucille Stuller, whereby I leased another 200+ acres of farmland which she owned in Perry Township, Coshocton County, Ohio for a twenty-year period, from January 1, 1987 through December 31, 2007.

RECEIVED 00 MAR -2 UNITED STATES ATTORNEY COLUMBUS, OHIO

Hand delivered
to OGC

3) Each of the Cash Farm Lease and Farm Lease gave me a first purchase option in the event the leased farmland was offered for sale or Lucille Stuller died.

4) On July 17, 1989, Lucille Stuller, as "owner" of the leased farmland, and I, as lessee and "operator" of the leased farmland, applied to enroll 450 acres of the leased land in the Conservation Reserve Program ("CRP") for a period of ten years, from 1990 through 1999. A true and correct copy of the CRP-1 application which was submitted to the Coshocton County Agriculture Stabilization and Conservation Service ("ASCS") is attached as Exhibit A to this affidavit. My application contained, among other things, confidential financial information.

5) On August 8, 1989, I was informed by the Coshocton County, Ohio office of the Agricultural Stabilization and Conservation Service ("ASCS") that my application for instatement in the Conservation Reserve Program would be accepted, subject to the farmland's being approved and deemed "eligible" by the Soil Conservation Service. A true and correct copy of that letter is attached at Exhibit B.

6) On August 31, 1989, the Soil Conservation Service determined that virtually all of the leased farmland was eligible for the CRP. A true and correct copy of the Soil Conservation Service report regarding such eligibility is attached as Exhibit C to this affidavit.

7) On September 4, 1989, Lucille Stuller died. On September 5, 1989, James Stuller, who is Lucille Stuller's son and who claims to be an heir to the farmland which she owned, went to the Coshocton County ASCS and spoke with its Executive Director, Mr. Loren Stutz, about the Conservation Reserve Program. Mr. Stutz informed me that this conversation occurred.

8) As illustrated by Exhibit D attached to this affidavit, a letter from Dorothy Leslie of the ASCS dated November 22, 1989, stated that on September 5th, 1989, Jim Stuller came to the ASCS office and informed them that Lucille Stuller had died and the heirs would not consent to enrollment of the land into the program.

9) On September 6, 1989, the Coshocton County ASCS met in private, without notice to me and without my being present, to consider the effect that Lucille Stuller's death might have on my application. I learned of this fact from a memorandum which the Coshocton County ASCS sent to the Ohio ASCS on September 25, 1989. A true and correct copy of that memorandum is attached as Exhibit E

10) On September 25, 1989, the Coshocton County ASCS wrote to the Ohio ASCS to get its opinion concerning the effect of Lucille Stuller's death on my application, as the memorandum attached as Exhibit E reflects.

11) Subsequent to Lucille Stuller's death, the Coshocton County ASCS informed me that the CRP-1 application would be denied unless Lucille Stuller's heirs also signed the application. A true and correct copy of the letter so informing me is attached as Exhibit F to this affidavit.

12) On or about September 28, 1989, the Coshocton County ASCS and the Ohio ASCS also consulted with the Washington, D.C. ASCS to get its opinion concerning the effect of Lucille Stuller's death on my application. A true and correct copy of a memorandum dated September 28, 1989 from the Ohio ASCS to the Coshocton County ASCS which reflects that consultation is attached as Exhibit G

13) On or about November 22, 1989 I received a letter from the Ohio ASCS, a true and correct copy of which is attached as Exhibit G. That letter indicates that James Stuller went to the Coshocton County ASCS, reported Mrs. Stuller's death, claimed to be her heir apparent and stated that he would not consent to entering into or continuing a CRP contract under the terms I had proposed.

14) Between November, 1989 and March, 1990, correspondence was exchanged and meetings were held regarding my application.

15) On March 29, 1990, I was informed in writing by the Coshocton County ASCS that I was not eligible to participate in the Conservation Reserve Program unless the heirs apparent to the farmland which Lucille Stuller had owned and which I leased signed my application. A true and correct copy of that letter is attached as Exhibit

H. The Coshocton County ASCS's determination concerning my noneligibility was reached after that agency consulted with the Ohio ASCS and Washington, D.C. ASCS and they reached the same opinion, as the letter as Exhibit I reflects.

16) After receiving the March 29, 1990 letter, I then requested reconsideration of the Coshocton County ASCS's determination concerning my noneligibility.

17) After a reconsideration hearing was held by the Coshocton County ASCS, I was informed by that agency in writing on May 2, 1990 that it had again determined, after again consulting with the Ohio ASCS and Washington, D.C. ASCS and being advised by those offices of what action to take, that I was not eligible to participate in the Conservation Reserve Program and denied the CRP-1 application because it had not been signed by Lucille Stuller's heirs. A true and correct copy of that letter is attached as Exhibit I.

18) I appealed the Coshocton County ASCS's denial of the CRP-1 application to the Ohio ASCS and to the United States ASCS, both of which affirmed the denial of the application because it had not been signed by Lucille Stuller's heirs.

19) I then filed an appeal with the Washington, D.C. ASCS.

20) I have never revealed to James Stuller or to any of the other heirs apparent of Lucille Stuller the terms or contents of the application and file materials which I provided to the Coshocton County ASCS in connection with my request for instatement in the Conservation Reserve Program.

21) I first discovered that there was a problem with my contract with the ASCS when I went into the SCS/ASCS office on Friday, September 8th, 1989.

22) At that time I went to see Tim Halt, who was in charge of the SCS office and responsible for approving or disapproving my plan.

23) Loren Stutz blocked my access to Tim Halt and asked me about the death of my grandmother and refused to allow me to see Tim Halt who was in the back parts of the office somewhere.

24) Because I never saw Tim Halt, I was not aware that the SCS had, in fact, approved my application and forwarded a plan on August 31st, 1989.

25) Following that meeting I received the following correspondence discussed above and which is attached.

26) Shortly after the date of November 22nd, 1989, I received the letter attached as Exhibit D which is dated November 22, 1989, from Dorothy Leslie. That letter indicates that a condition of the contract is that the land meet CRP eligibility requirements as a condition of the contract. Neither this letter or any other communications from the ASCS office ever indicated to me that the SCS had approved my plan and, in fact, all correspondence indicated that it was condition yet to be met.

27) Over the next six months I pursued my administrative appeals pursuant to the Administrative Procedure Act through the various levels of appeals provided by the Department of Agriculture. Throughout those appeals the question was always whether or not my contract would be instated by the ASCS. At no time is there anything in the records of this appeal nor was I informed that the SCS had already approved my contract on August 31st, 1989.

28) In August of 1990, through counsel I filed a complaint against Secretary Yeutter for violation of the Privacy Act and for equitable relief ordering the ASCS to enroll me in the 10-year plan.

29) At the time of filing the complaint both I and my counsel were unaware that the SCS approved the plan and made the contingent contract binding.

30) Review of that complaint will show that no such allegation was made in the recital of facts in the Complaint.

31) Subsequent to the *filing of the complaint, pursuant to discovery in 1991 my* counsel obtained copies of the SCS approval that had been filed with the ASCS on August 31, 1989.

32) On November 15, 1991, this court dismissed my claim for equitable relief for instatement into the program upon its own motion.

33) There was no opportunity to amend the complaint for breach of contract or for reinstatement of the claim as opposed to an initial instatement to begin with.

34) Pursuant to discovery I requested a copy of my relevant file with regard to the Privacy Act claims. A review of that file and in a deposition of Loren Stutz, Executive Director of the Coshocton County ASCS, showed no references to Mr. James Stuller.

35) Mr. Loren Stutz also stated in his deposition he had only spoken in the past to James Stuller once with regard to my file and that was on September 5, 1989.

36) Subsequently, in March 1998, pursuant to a request for my file pursuant to the Freedom of Information Act I obtained many documents from the ASCS that I had not seen before.

37) Among those documents were a number of handwritten notes by Loren Stutz indicating a number of conversations with James Stuller and these are attached as *Exhibits J through N, with Exhibit N containing a number of different documents*

38) These documents were not with the documents produced by discovery in the prior action.

39) Among those documents is a document of handwritten notes attached as Exhibit J indicating that Loren Stutz had a telephone conversation with Jim Stuller in August of 1989 in which Jim Stuller indicated he would sue the ASCS as soon as my grandmother died.

40) In addition, the document attached as Exhibit O and previously not disclosed, has the signatures of Duane Cottrell my father, and Vince Haldeman, my uncle indicating that the ASCS, or the SCS not only disclosed my file to to my father and my uncle, but were obtaining their approval of that same file.

Jeffrey Cottrell

Sworn to before me and subscribed in my presence this Monday, February 28, 2000.

NOTARIAL SEAL STATE OF OHIO

DENISE C. LEMAY
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 11/17/03

Notary Public.