# In the United States Court of Federal Claims

No. 05-990 C

(Filed: June 13, 2006)

| | | |
|---|---|---|
| ****************************************** | | |
| **JEFFREY D. COTTRELL,** Plaintiff, v. **THE UNITED STATES,** Defendant. | * * * * * * * * * * | **Conservation Reserve Program; Statute of limitations under 28 U.S.C. § 2501; Production Flexibility Contract; Failure to exhaust administrative appeals under 7 U.S.C. § 6912(e) and 7 C.F.R. § 11.13(b) goes to the sufficiency of the claim asserted** |
| ****************************************** | | |

*John T. Ryerson*, Columbus, OH, counsel of record for Plaintiff.

*Kelly B. Blank*, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., counsel of record for Defendant, with whom were *Peter D. Keisler*, Assistant Attorney General, *David M. Cohen*, Director, and *Bryant G. Snee*, Assistant Director.

---

**OPINION AND ORDER**

---

**DAMICH**, Chief Judge.

## I. Introduction

Plaintiff Jeffrey D. Cottrell filed suit seeking monetary damages in connection with applications he submitted to participate in two U.S. Department of Agriculture ("USDA") programs–the Conservation Reserve Program ("CRP") and the Production Flexibility Contract ("PFC") program. On December 29, 2005, Defendant filed a motion to dismiss Plaintiff's claims for failure to state a claim or alternatively, for lack of subject matter jurisdiction pursuant to

Rules 12(b)(6) and 12(b)(1) of the United States Court of Federal Claims ("RCFC"). For the reasons set forth below, Defendant's motion is GRANTED.

## II. Background

### A. Plaintiff's 1989 CRP Claim

CRP is an agricultural program designed to "assist owners and operators of highly erodible cropland in conserving and improving the soil and water resources of their farms or ranches." 16 U.S.C. § 3831(a) (1988). To effectuate this program, Congress authorized the Secretary of the USDA to enter into rental contracts with the owners and operators of eligible cropland. *Id.* § 3831(e). Under the program, eligible owners and operators must agree to refrain from planting crops and agree to utilize the land for less intensive purposes, such as for "pasture, permanent grass, legumes, forbs, shrubs or trees . . . ." *Id.* § 3832(a)(1). In exchange, the USDA agrees to "share the cost of carrying out the conservation measures," "pay an annual rental payment" to the owner or operator, and to "provide conservation technical assistance." *Id.* § 3833. In order to be eligible for this program, however, the owner or operator must: (1) include an approved conservation plan, and (2) non-owner operators (such as Plaintiff) must provide assurance of control of the land for the duration of the contract period. Def.'s App. at 4 (citing the CRP Contract); 7 C.F.R. §§ 704.3(b), 704.9, 704.6(a) (1989).

On July 17, 1989, Plaintiff and his grandmother, Lucille Stuller, the owner of the farmland at the time, submitted an application to have two parcels of land participate in the CRP from January 1, 1990, through December 31, 1999. Compl. ¶ 4; Def.'s App. at 1-14. Although Lucille Stuller owned the parcels, Plaintiff entered into two leases with her in 1986, thereby making him the operator of the land for the duration of the leases. Compl. ¶ 3. Less than two months after submitting the application, Lucille Stuller passed away. Def.'s Mot. at 4; Pl.'s Resp. at 8. In her will, Lucille Stuller bequeathed to her four children equal interests in her estate and named her daughter, Nancy Cottrell (Plaintiff's mother), executrix. *Id.* Nancy Cottrell's siblings (her co-heirs) filed suit in Ohio state court disputing the will and Plaintiff's leases. *Id.* Litigation challenging the will, the validity of Plaintiff's leases, and seeking the partition of the bequeathed land lingered on while Plaintiff attempted to participate in the USDA programs involved herein.

On September 5, 1989, the District Conservationist approved Plaintiff's plan thereby satisfying the first eligibility prong for operators. Def.'s Mot. at 4. However, in a letter dated November 14, 1989, the Agricultural Stabilization and Conservation Service ("ASCS") Committee ("County Committee") informed Plaintiff that because he could not demonstrate that he had the requisite legal control over the land in question for the duration of the CRP period (one of the leases expired short of the entire CRP term), his application would be delayed pending the approval of the "[e]xecutors of the estate of Lucille Stuller" and "[e]ach heir that will acquire an interest in the land pursuant to the terms of Lucille Stuller's will." Def.'s App. at 19. The County Committee wanted to ensure that the owners of the land agreed that Plaintiff could

place it in the program even though the terms of the CRP extended past the original term in one of Plaintiff's leases. *See id.*; *see also Cottrell v. Yuetter*, No. 93-4336, 1994 WL 560967 at *1 (6th Cir. 1994). The letter stated that Plaintiff shall obtain and provide the County Committee with the necessary signatures by November 20, 1989. *Id.* Plaintiff never obtained the requested signatures because Lucille Stuller's heirs (with the exception of Nancy Cottrell) would not sign the contract. Def.'s Mot. at 6.

In a letter dated March 29, 1990, the County Committee reiterated that Plaintiff's application could not be accepted without the additional signatures of Lucille Stuller's heirs. Def.'s App. at 25. The letter informed Plaintiff that he had 15 days to request reconsideration of the County Committee's determination. *Id.* Upon Plaintiff's request, the County Committee reconsidered Plaintiff's application and informed him on May 2, 1990, that his request "for Conservation Reserve acceptance had been denied." *Id.* at 26. The letter further stated, "[i]f you feel that we have not properly considered the facts in the case, you may appeal this decision to the State Committee within 15 days of the date of this letter." *Id.*

Plaintiff appealed the County Committee's decision to the State Committee arguing that the terms of the lease, in question, provided him with the option to extend its term without further approval from Lucille Stuller or her heirs. *Id.* at 27. In a letter dated July 19, 1990, the State Committee denied Plaintiff's appeal stating that it supports the County Committee's determination. *Id.* at 28. The letter further stated that Plaintiff "may appeal within fifteen days" to the "Deputy Administrator, State and County Operations Agricultural Stabilization and Conservation Service . . . ." *Id.* On March 3, 1991, following a telephonic hearing, the USDA Deputy Administrator of State and County Operations ("USDA Deputy Administrator") found that "the State committee took appropriate action in determining that the leases presented were not sufficient evidence to substantiate [Plaintiff's] control of the land offered for CRP enrollment for the required period." *Id.* at 31. Moreover, the letter stated, "[t]his concludes the administrative appeal rights afforded at 7 C.F.R. Part 780, Appeal Regulations." *Id.*

On August 15, 1990, before the USDA Deputy Administrator reached a determination, Plaintiff filed suit in the Southern District of Ohio against the then-Secretary of the USDA alleging that the USDA's denial of his CRP application was arbitrary and capricious.[1] Def.'s App. at 33; Def.'s Mot. at 6. On October 7, 1993, the district court entered final judgment denying Plaintiff's claim. *Cottrell*, 1994 WL 560967 at *1.

Plaintiff appealed the district court's determination to the U.S. Court of Appeals for the Sixth Circuit. On October 11, 1994, the Sixth Circuit affirmed the district court's ruling, stating that the district court "was asked to review a decision made by an arm of the executive branch"

[1]At the time Plaintiff filed suit in the district court, he was not statutorily required to exhaust his administrative appeals. Exhaustion became mandatory in 1994 with the passage of the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994. *See* Pub. L. No. 103-354 (codified at 7 U.S.C. § 6991 *et seq.*); 7 U.S.C. § 6912(e) (1994).

as to "whether or not the Secretary wrongfully decided that Cottrell was not eligible to participate in the CRP." *Id.* at *3. "The evidentiary material of record amply supports the district court's decision." *Id.* "Cottrell does not appear to be a person eligible to participate in the CRP as defined." *Id.* at *4. In affirming the lower court's determination that Plaintiff lacked the necessary control over the land in question, the court stated, "Cottrell must concede that the specter of a will contest between heirs apparent looming on the horizon might well lead one to conclude that there is certainly *not* satisfactory evidence of Cottrell's long-term control of the land, regardless of the actual outcome of any such will contest." *Id.*

More than four years later, on March 18, 1999, Plaintiff filed another lawsuit in the Southern District of Ohio against the then-Secretary of the USDA. Pl.'s App. at vol. 2. In this suit, however, Plaintiff did not seek review of the agency's determination as he did in the previous suit, but rather styled his complaint as a breach of contract claim. *Id.* at vol. 2, 6. Plaintiff alleged that his applications constituted offers which the USDA accepted when it approved his conservation plan, thereby creating a valid and enforceable contract. *Id.* Plaintiff argued that the USDA breached the contract when it revoked his ability to participate in the program. *Id.*

On July 18, 2000, the district court held that it lacked jurisdiction over Plaintiff's breach of contract claim finding that it was outside the scope of the "Little Tucker Act" which provides the district courts and the U.S. Court of Federal Claims ("COFC") with concurrent jurisdiction over non-tort monetary claims against the United States not exceeding $10,000. *See id.* at vol. 2, 9-10 (citing 28 U.S.C. § 1346(a)(2)). Because Plaintiff's claim exceeded $10,000, the district court determined that jurisdiction rested in the COFC. *Id.* at vol. 2, 16. The court also found that even if the court had jurisdiction, Plaintiff failed to present his breach of contract claim to the agency and, thus, failed to exhaust his administrative remedies. *Id.* at vol. 2, 20-21. Additionally, the court held that Plaintiff's contract claim was barred by the doctrine of *res judicata* because Plaintiff should have raised it in his previous district court case. *Id.* at vol. 2, 22-23. The court reasoned that since the County Committee approved Plaintiff's contract in 1989, and Plaintiff learned this fact through discovery in 1991 (Plaintiff alleges that this information gave rise to his contract claim), Plaintiff should have moved at that time to amend the complaint filed in the previous district court case. *Id.* at vol. 2, 23. From the record, it does not appear as though Plaintiff appealed this decision to the Sixth Circuit.

On September 13, 2005, more than five-years after the conclusion of the second district court case and 15 years after the USDA Deputy Administrator denied Plaintiff's appeal, Plaintiff filed suit in this court alleging that the USDA improperly denied his 1989 CRP application and, thus, breached the contract. Compl. ¶ 8; Pl.'s Resp. at 2, 7-9. On December 29, 2005, Defendant filed its motion to dismiss. As to Plaintiff's 1989 CRP claim, Defendant argues that it should be dismissed for three reasons, including: (1) Plaintiff's claim is barred by the statute of limitations; (2) Plaintiff has failed to allege or establish the elements of an express or implied contract with the United States or the existence of a money-mandating statute upon which a claim for damages

could be based;[2] and (3) Plaintiff's claim is barred by the doctrine of *res judicata*. Def.'s Reply 6-13.

**B. Plaintiff's 1996 PFC Claim**

The PFC program is an agricultural program where the USDA enters into production flexibility contracts with agricultural producers "to support farming certainty and flexibility while ensuring continued compliance with farm conservation and wetland protection requirements." 7 U.S.C. §§ 7201(b)(1), 7211(a) (1996, Supp. II). Specifically, the USDA agrees to pay owners or producers an annual payment in exchange for compliance with various planting, conservation, and land-use restrictions. *Id.* § 7211(a). In order to be eligible for the program, however, the operator of the land must demonstrate that he will maintain control over the land for the program's duration or have the actual land owner enter into the PFC contract. *Id.* § 7211(b).

Underlying Plaintiff's PFC claim are two farms he leased from his grandmother prior to her death in 1989. Pl.'s App. at vol. 1, 13. Prior to submitting an application to enroll these farms in the PFC program, on December 1, 1994, Plaintiff assigned one of leases to Nancy Cottrell (his mother) in consideration for debt forgiveness. *Id.* On or about, July 12, 1996, Plaintiff and his mother submitted an application to the USDA to enroll these two farms in the PFC program. *See* Compl. at Ex. D; Pl.'s App. at vol. 3, 21. Plaintiff alleges that on August 7, 1996, the Coshocton County FSA Office ("County Committee") approved his and his mother's application. Compl. at Ex. E; Pl.'s Resp. at 4. Ultimately, however, the County Committee determined that it could not issue payment because there was a "dispute" over who was entitled to receive payment as a result of the will contest and related litigation. Def.'s App. at 44-45. In fact, on October 27, 1997, Lucille Stuller's son, James Stuller raised several concerns regarding the validity of the leases in question with the County Executive Director, Michael Jacob. Pl.'s Resp. at 5; Pl.'s App. at vol. 3, 14. On that same day, Mr. Jacob sent Plaintiff a letter informing him that his "interest as tenant/operator for . . . purposes [of the PFC program] has ended" because one of the farm leases expired and the other was assigned to Nancy Cottrell. Pl.'s App. at vol. 3, 14.

---

[2]In addition to its argument that Plaintiff cannot establish the existence of a contract or a money-mandating statute, Defendant also argues that Plaintiff's complaint is insufficient because it does not even *allege* a breach of contract claim or a money-mandating statute, but simply alleges that the government improperly denied both of his applications. Def.'s Mot. at 2. In his opposition, Plaintiff asserts that although his complaint does not explicitly allege a breach of contract, he nonetheless sufficiently states a contract claim. Pl.'s Resp. at 3. Plaintiff is willing to amend his complaint to clarify the basis of his claims, but believes that it would make more sense to await the resolution of Defendant's motion. *Id.* As Plaintiff's response sufficiently clarifies the contractual basis of his claims, and Defendant has addressed Plaintiff's claims in its motion and reply, the court does not believe it is necessary for Plaintiff to amend his complaint.

Once again, on January 8, 2001, the County Committee reiterated to Plaintiff that it "lacked authority to settle payment disputes" and noted that its "determination is an issue that is generally applicable to all participants and producers and therefore is not appealable." *Id.* The County Committee informed Plaintiff that he may resolve the uncertainty by submitting: an "agreement by all parties as to the acreage covered by the leases associated with this acreage; deeds filed at the county recorder's office showing ownership, and a legal description agreed to by each owner/leasee agreeing to such acreage. *A final court determination may also be provided.*" *Id.* (Emphasis added). The letter further stated that Plaintiff has 30 days to "request a review of the appealability of this determination" with the National Appeals Division ("NAD"). *Id.* Plaintiff requested a review with NAD and in a March 26, 2001, letter, NAD informed Plaintiff that it agreed with the County Committee's assessment that the decision is not appealable. Pl.'s Resp. at 6; Pl.'s App. at vol. 3, 15. The letter explicitly stated, "[a] final NAD determination is reviewable by any United States *District* Court of competent jurisdiction . . . ." Pl.'s App. at vol. 3, 18 (emphasis added).

Soon thereafter, Plaintiff complied with the County Committee's January 8, 2001, request and provided it with a "final court determination," which settled the payment dispute. Pl.'s App. at vol. 3, 14. In an August 15, 2001, letter, the County Committee informed Plaintiff that since "the lease dispute has been settled," it will consider him "as owner/lessor for the 1996 crop year and Nancy Cottrell as tenant/lessee for the 1996 crop year." *Id.* at vol. 3, 21. However, the County Committee reasoned that since Nancy Cottrell is the lessee of the land in question, it had to "disapprove" the submitted application which depicted the division of shares differently. *Id.* The Committee offered Plaintiff and his mother the opportunity to submit an "amended application" depicting the correct division of shares held by each party. *Id.* Moreover, the Committee explicitly informed Plaintiff that if he wishes to appeal its decision to NAD or any of the intermediate appellate bodies, he may do so within 30 days. *Id.* at vol. 3, 21-22.

Plaintiff does not assert that he appealed the County Committee's August 15, 2001, determination to the NAD nor does the record reflect such an appeal. Rather, Plaintiff alleges that on or about September 17, 2001 (more than 30 days after the Committee's determination), County Executive Michael Jacob informed him and his mother that "if they did not immediately agree to a revised [PFC Contract]" wherein "*Nancy Cottrell would receive all of the funds* . . ." "no money would be paid under the 1996 [PFC] program . . . ." Pl.'s Resp. at 6 (emphasis added). Plaintiff alleges that "[f]aced with this prospect, [he] signed the agreement . . . ." *Id.*

On September 13, 2005, more than four years after the County Committee's determination, Plaintiff filed suit in this court alleging that the County Committee "wrongfully denied payment for the 1996 PFC program . . . ." *Id.* Defendant argues that Plaintiff's 1996 PFC claim should be dismissed because Plaintiff is required to submit a USDA appeal to NAD and then subsequently to a district court which has exclusive jurisdiction over NAD appeals. Def.'s Reply at 2-3.

## III. Discussion

### A. Plaintiff's 1989 CRP Claim

#### 1. Statute of Limitations

##### i. The Arguments of the Parties

Defendant argues that Plaintiff's CRP claim is barred by the statute of limitations set forth in 28 U.S.C. § 2501, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition is filed within six years after such claim first accrues." Def.'s Reply at 10. Defendant asserts that, as a breach of contract claim, Plaintiff's claim accrued when the alleged breach occurred. *Id.* As Plaintiff alleges that the USDA breached the CRP contract when it improperly denied his application, the claim accrued when the USDA communicated its decision to Plaintiff. Therefore, Defendant asserts that Plaintiff's claim accrued on March 3, 1991, *at the latest*, when the USDA Deputy Administrator denied his final appeal, stating that "[t]his concludes the administrative appeal rights afforded at 7 C.F.R. Part 780." Def.'s Mot. at 17 (citing Def.'s App. at 31).

In response, Plaintiff argues that since he "did not have knowledge of all the operative facts relating to the approval and submission of his conservation plan *until recently*, he should not be held to an earlier statute of limitations date." Pl.'s Resp. at 10 (emphasis added). Essentially, Plaintiff contends that since he was not aware that he had a breach of contract claim until he discovered that the USDA had in fact approved his conservation plan, his claim could not have accrued with the denial of his claim. Plaintiff alternatively argues that April 22, 2004, is when his claim accrued because that is when the Deputy Chief for Programs at the Natural Resources Conservation Service of the USDA, informed him in a letter that "[f]rom your [two email] messages, it appears that *you have* exhausted your administrative appeals with FSA related to your 1989 CRP contract." *Id. See* Compl. at Ex. G (emphasis added). According to Plaintiff, this letter represents the exhaustion of his administrative appeals and, hence, the accrual of his claim. Pl.'s Resp. at 10.

In its Reply, Defendant refutes Plaintiff's first argument by asserting that even if his claim did not begin to accrue until he learned of the USDA's approval of his plan, Plaintiff's own affidavit conclusively establishes that he has been aware of this fact since 1991. Def.'s Reply at 11 (citing Def.'s App. at Ex. A ¶ 24-31). As to Plaintiff's assertion that his claim accrued on April 22, 2004, Defendant asserts that Plaintiff has mischaracterized the nature of this letter. *Id.* Defendant argues the letter does not state that it represents the exhaustion of Plaintiff's administrative appeals, but simply that, in the Deputy Chief's opinion, it appeared that Plaintiff *had* previously exhausted his appeals. *Id.* In fact, Plaintiff exhausted his administrative appeals as of March 3, 1991, when the USDA Deputy Director Administrator denied his appeal and explicitly stated, "[t]his concludes the administrative appeal rights afforded at 7 C.F.R. Part 780." *Id.* at 11 (citing Def.'s App. at 31).

**ii. Standard of Review as to Plaintiff's 1989 CRP Claim**

Defendant asserts that the statute of limitations issue is properly raised in a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1). Def.'s Mot. at 16, 18. Plaintiff does not address the standard of review. Despite Defendant's assertion, however, the court will follow the reasoning employed in *Grass Valley v. United States*, wherein this court held that failure to file within the limitations period does not remove the court's subject matter jurisdiction, but rather goes to the sufficiency of the claim asserted. 69 Fed. Cl. 341, 346 (2005) (citing *Venture Coal Sales Co. v. United States*, 370 F.3d 1102, 1105 n. 2 (Fed. Cir. 2004); *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 878 (Fed. Cir. 1998); *Borough of Alpine v. United States*, 923 F.2d 170, 170 n.1 (Fed. Cir. 1991); *Bray v. United States*, 785 F.2d 989, 992 (Fed. Cir. 1986)). Accordingly, Defendant's motion will be treated as a motion to dismiss for failure to state a claim under RCFC 12(b)(6).

Although the basis for Defendant's motion makes it a RCFC 12(b)(6) motion (with Defendant carrying the burden) rather than a RCFC 12(b)(1) motion (where Plaintiff would carry the burden), RCFC 12(b) provides that where "matters outside the pleadings are presented and not excluded by the court, the motion *shall be treated as one for summary judgment*." RCFC 12(b) (emphasis added). Since Defendant presented matters outside the pleadings with its motion and reply, the court will treat it as a motion for summary judgment under RCFC 56. *See generally* Def.'s Mot.; Def.'s Reply.

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Jay v. Sec'y, DHHS,* 998 F.2d 979, 982 (Fed. Cir. 1993). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Jay,* 998 F.2d at 982. Once the moving party makes this showing, however, the burden then shifts to the non-movant to establish the existence of a genuine issue of material fact that can only be resolved at trial. *See Novartis Corp. v. Ben Venue Lab.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). The court must resolve any doubts regarding factual issues in favor of the non-moving party and draw all reasonable inferences in its favor. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1307 (Fed. Cir. 1998); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995). In order for a factual dispute to be genuine, the evidence must be such that a reasonable jury or trier of fact could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. However, summary judgment must be entered against a party who fails to sufficiently establish an essential element to that party's case where that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23 (internal quotations omitted).

### iii. Plaintiff's 1989 CRP Claim is Time Barred

28 U.S.C. § 2501 provides that a claim is time barred unless filed within 6 years from the date of accrual. Plaintiff filed his complaint on September 13, 2005. Thus, his cause of action must have accrued no earlier than September 13, 1999. A claim accrues when "all the events which fix the government's alleged liability have occurred and *the plaintiff was or should have been aware of their existence*." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (emphasis added) (quoting *Hopland Band of Pomo. Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). "Generally, '[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs.'" *Id.* (quoting *Mfr. Aircraft Ass'n v. United States*, 77 Ct. Cl. 481, 523 (1933)).

Plaintiff alleges that the USDA breached the contract when it denied his 1989 CRP application. After receiving the County Committee's denial on March 29, 1990, Plaintiff pursued his administrative remedies which ultimately lead to the final denial of his appeal on March 3, 1991, wherein the USDA Deputy Administrator informed Plaintiff that, "[t]his concludes [his] administrative appeal rights afforded at 7 C.F.R. Part 780." Def.'s App. at 25, 31. Accordingly, and as argued by Defendant, Plaintiff's claim seems to have accrued *no later* than March 3, 1991. Def.'s Mot. at 17.

Although this would generally be accurate, Plaintiff contends that since he was not aware of his breach of contract claim until he discovered that the USDA approved his conservation plan, his claim could not have accrued with the USDA's denial of his claim. *See* Pl.'s Resp. at 10; *see also Alder Terrace*, 161 F.3d at 1377 (stating that a claim accrues when "all the events which fix the government's alleged liability have occurred and the *plaintiff was or should have been aware* of their existence") (emphasis added). Rather, Plaintiff contends that his claim only accrued once he became aware of the approval of his plan.

Interestingly enough, Plaintiff does not state when he became aware of this information, but simply asserts that he "did not have knowledge of all the operative facts relating to the approval and submission of his conservation plan *until recently*." Pl.'s Resp. at 10 (emphasis added). Despite Plaintiff's omission, however, an affidavit he filed in another proceeding, indicates that he has been aware of the USDA's approval and the facts pertaining thereto since 1991–more than 14 years before he filed suit in this court. Def.'s App. at Ex. A ¶ 31 (stating that "pursuant to discovery in 1991 my counsel obtained copies of the SCS approval that had been filed with the ASCS on August 31, 1989"); *see id.* at Ex. A ¶¶ 24-33. Also weighing against Plaintiff's assertion that he only "recently" learned of this information is the fact that he filed a breach of contract suit in the U.S. District Court for the Southern District of Ohio on March 18, 1999–a breach of contract action that *closely* resembles this suit. Pl.'s Resp. at 10.

Alternatively, Plaintiff asserts that an April 22, 2004, letter from the Deputy Chief for Programs at the Natural Resources Conservation Service marks the day he exhausted his administrative appeals–and, thus, represents the accrual of his claim. *Id.* *See* Compl. at Ex. G.

However, the record indicates that Plaintiff's administrative appeals were exhausted as of March 3, 1991. Def.'s App. at 31. As argued by Defendant, the letter referenced by Plaintiff does not represent any decision regarding Plaintiff's claim, but is simply a letter in response to Plaintiff's multiple inquiries, wherein the Deputy Chief for Programs informs Plaintiff that based on the information *Plaintiff provided* to him, it appears that Plaintiff exhausted his administrative appeals. The reality is that Plaintiff did so a long time–13 years ago.

Accordingly, and regardless of whether Plaintiff's claim accrued in 1990 (with the County Committee's initial denial of his claim), 1991 (with the USDA Deputy Administrator's final denial or when he learned of the USDA's approval of his conservation plan), or 1999 (when he filed his contract claim in the Southern District of Ohio), it appears that Plaintiff has been aware of "all the events which fix the government's alleged liability" for *more* than six years prior to his filing suit. *Alder Terrace*, 161 F.3d at 1377 (quoting *Hopland*, 855 F.2d at 1577).

For these reasons, Defendant's motion is GRANTED as to Plaintiff's 1989 CRP claim. In light of the court's finding, it is unnecessary to address Defendant's remaining arguments.

### B. Plaintiff's 1996 PFC Claim

#### 1. The Arguments of the Parties

Defendant argues that Plaintiff's 1996 PFC claim should be dismissed for two reasons. Def.'s Reply at 3-4. First, Defendant asserts that Plaintiff is required to appeal an agency's adverse decision to NAD under 7 U.S.C. § 6912(e) (2000) before filing in a court of competent jurisdiction. *Id.* at 4. As Plaintiff does not contend that he appealed the agency's final decision to NAD, Defendant argues that Plaintiff failed to exhaust his administrative appeals. *Id.* Second, Defendant asserts that even if Plaintiff did appeal to NAD as is required, jurisdiction over NAD appeals is vested exclusively within the province of the district courts–not the COFC. *Id.* at 4-5 (citing 7 U.S.C. § 6999 (2000)).

In response, Plaintiff argues that Defendant's assertions contradict *Cottrell v. Glickman, Secretary USDA,* C-2-99-282, a decision rendered by a district court judge with respect to Plaintiff's 1989 CRP claim. Pl.'s Resp. at 7 (citing Pl.'s App. at vol. 2). In that case, the court dismissed Plaintiff's claim on various grounds, including lack of jurisdiction, finding that since his claim is based on an alleged contract with the United States wherein he seeks damages in excess of $10,000, it rests within the exclusive jurisdiction of the COFC. Pl.'s App. at vol. 2, 10. *See* Sec. II, A at 4 (discussing the district court's findings). Plaintiff asserts that this case also demonstrates that exhaustion is not required, stating in his response that the exhaustion requirement asserted by Defendant "flies in the face" of the district court's ruling. *See* Pl.'s Resp. at 6-7. Although the district court stated that jurisdiction over Plaintiff's contract claim rests in the COFC, the court also found that Plaintiff failed to exhaust his administrative remedies relating to his 1989 CRP claim. Pl.'s App. at vol. 2, 20-21. Therefore, it is hard to see

how the Defendant's argument regarding exhaustion of administrative remedies "flies in the face" of the district court's decision.

In its reply, however, Defendant does not rely on *Cottrell v. Glickman, Secretary USDA*, but, to the contrary, argues that the district court' ruling has no bearing or precedential effect on this court because the suit did not involve Plaintiff's 1996 PFC claim, but rather his 1989 CRP claim. Def.'s Reply at 6. In addition, Defendant argues that the district court's decision does not confer jurisdiction upon this court. *Id.* at 5.

**2. Standard of Review**

Defendant moves to dismiss Plaintiff's PFC claim for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1) or alternatively, for failure to state a claim pursuant to RCFC 12(b)(6). Once jurisdiction is challenged, Plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Under the Tucker Act, "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon the Constitution, or any Act of Congress or any regulation of an executive department, or *upon any express or implied contract* with the United States . . . . 28 U.S.C. § 1491 (emphasis added). In evaluating a motion to dismiss made under both 12(b)(1) and(6) the court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the nonmoving party. *See, e.g., Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003).

**3. Plaintiff Failed to Exhaust Administrative Appeals**

Defendant argues that Plaintiff's PFC claim should be dismissed under RCFC 12(b)(1) or 12(b)(6) because he failed to exhaust his administrative appeals. In the context of this case, the appropriate motion is one for failure to state a claim pursuant to RCFC 12(b)(6).

Generally, the Tucker Act provides the court with jurisdiction over any claim against the U.S. sounding in contract. 28 U.S.C. § 1491. Although Plaintiff's complaint does not represent a beacon of clarity (as Plaintiff, himself, admits), it is nonetheless sufficient under the principles of notice pleading to constitute a claim for breach of contract against the federal government. Pl.'s Resp. at 2-3.

This court and the Court of Appeals for the Federal Circuit have already held that where a claimant fails to file his complaint in a timely manner the court's jurisdiction over the subject of the suit remains intact; rather, all that is affected is the court's ability to exercise that jurisdiction. *Grass Valley v. United States*, 69 Fed. Cl. 341, 346 (2005) (holding that failure to file within the six-year statute of limitations period "goes to sufficiency of the claim asserted and, thus, does not affect the court's subject matter jurisdiction"). *See also Borough of Alpine v. United States*, 923 F.2d 170, 170 n.1 (Fed. Cir. 1991) (addressing the lower court's dismissal on subject matter

grounds and stating that the "Claims Court has and will continue to have jurisdiction over the subject matter of Contract Disputes Act cases. However, in this case, because of its failure to file a timely appeal, Alpine was not entitled to have the Claims Court exercise its subject matter jurisdiction"). In this context, the court is unable to discern a difference between the requirement to file in a timely manner and the requirement to exhaust administrative remedies. Accordingly, a RCFC 12(b)(6) motion is the proper vehicle to attack Plaintiff's failure to exhaust administrative remedies–not a 12(b)(1) motion.

This court need not decide whether the PFC is a contract in order to decide whether the Plaintiff is required to exhaust his administrative remedies (although PFC stands for Production Flexibility *Contract*). Even if the PFC is a contract, it is a contract subject to 7 U.S.C. § 6912(e), which requires Plaintiff to "exhaust all administrative appeal procedures established by the Secretary or required by law before [he] may bring an action in a court of competent jurisdiction . . . ." 7 C.F.R. § 780.7 (1996) describes the established administrative appeal procedures. Moreover, 7 C.F.R. § 11.13(b) (1997) expressly provides that "[a]n appellant may *not* seek judicial review of *any* agency adverse decision appealable under this part without receiving a final determination from the Division . . . ." (Emphases added). Therefore, Plaintiff is required to seek review of the agency's determination with NAD before filing suit. *See* 7 C.F.R. § 780.2(a)(1) (1996). Failure to do so precludes a court of competent jurisdiction from reviewing his claim, no matter which court this is.

The relevant "adverse decision" involved here is the County Committee's August 15, 2001, determination wherein it informed Plaintiff in writing that it had disapproved his application because it did not accurately depict the division of shares held by him and his mother. *See* 7 C.F.R. § 11.13(b); *see also* Pl.'s App. at vol. 3, 21. The letter provided Plaintiff and his mother with two options. Pl.'s App. at vol. 3, 21-22. They could submit an "amended application" accurately depicting the division of shares or they could appeal the Committee's determination to NAD within 30 days. *Id.* Plaintiff does not assert that he appealed this "adverse decision" to the NAD. *See generally,* Pl.'s Resp. Rather, Plaintiff acknowledges that he, in fact, accepted the County Committee's determination and submitted an amended application which ultimately led to the Committee making all payments to his mother, as she was the lessee of the land in question. *See* Pl.'s Resp. at 6. As Plaintiff did not appeal the Committee's determination to NAD as is required before filing suit in a court of competent jurisdiction, he failed to exhaust his administrative appeals and, thus, failed to state a claim upon which relief can be granted.

In arriving at this decision, the court has indulged Plaintiff's assertion that he has a claim at all–that is, under any theory. The court wonders whether Plaintiff acquiesced to the County Committee's determination thereby precluding any basis for appeal when he submitted an amended application which ultimately led to the Committee making all payments to his mother. This, however, is not one of the issues before the court.

For these reasons, Defendant's motion is GRANTED as to Plaintiff's 1996 PFC claim. In light of the court's finding, it is unnecessary to address Defendant's remaining argument.

## IV. Conclusion

Defendant's motion to dismiss Plaintiff's 1989 CRP claim and his 1996 PFC claim is GRANTED. Plaintiff's cause of action shall be dismissed with prejudice.

s/ Edward J. Damich
EDWARD J. DAMICH
Chief Judge